MARGUERITE OWENS HARRELL, BY HER PARENTS ALLEN W. HARRELL AND IRENE BURK HARRELL v. WILSON COUNTY SCHOOLS, DR. W. O. FIELDS, JR., SUPERINTENDENT AND NORTH CAROLINA DEPARTMENT OF PUBLIC INSTRUCTION, DR. A. CRAIG PHILLIPS, SUPERINTENDENT

No. 817SC793

(Filed 20 July 1982)

1. Schools § 10— free appropriate public education for handicapped children— most appropriate education not required

Statutes requiring a free appropriate publicly supported education for handicapped children, G.S. 115-363 and 20 U.S.C. 1400(c), do not require a local school agency to provide a handicapped student with the most appropriate education. Therefore, the decision of a county school system to place a 13-year-old hearing impaired child in a regular sixth grade class with support services rather than to provide a grant to subsidize the child's education at an out-of-state residential institution was not affected by error of law.

2. Schools § 10— hearing impaired student—individualized educational program—predisposition of consultant to mainstream handicapped students

A hearing impaired student was not denied due process because a consultant for programs for the hearing impaired in the public schools of North Carolina with a preference for mainstreaming hearing impaired students rather than putting them in residential facilities served on the committee which developed an individualized educational program for the student.

3. Schools § 10— hearing impaired student—individualized educational program—compliance with rules and regulations

A county school system substantially complied with relevant State and federal rules and regulations requiring a multi-disciplinary diagnosis and evaluation in developing an individualized educational program for a hearing impaired student. Furthermore, the decision of the school system to place such student in a regular sixth grade class with support services rather than to provide a grant to subsidize the child's education at an out-of-state residential institution was supported by substantial evidence under the whole record test and was not arbitrary and capricious. G.S. 115-375; 16 NCAC 2E. 1510.

Judge WELLS concurs in the result.

APPEAL by plaintiff from *Stevens, Judge.* Judgment entered 27 February 1981 in Superior Court, WILSON County. Heard in the Court of Appeals 31 March 1982.

This appeal questions whether the Wilson County School System properly determined that a 13-year-old hearing impaired child would receive a free appropriate education by placing her in a regular sixth grade class within the Wilson Public Schools instead of providing a grant to subsidize the child's education at an out-of-state residential institution.

*Hopkins & Allen, by Janice Watson Davidson and Grover Prevatte Hopkins, for plaintiff appellant.*

*Rose, Jones, Rand & Orcutt, P.A., by Z. Hardy Rose and L. Patrick Fleming, Jr., for defendant appellees.*

BECTON, Judge.

I

On 17 July 1978, the parents of Marguerite Harrell, a hearing impaired child, applied to the Wilson County Schools for a grant, pursuant to G.S. 115-363 (1977), to cover the cost of sending Marguerite to the Central Institute for the Deaf (CID) in St. Louis, Missouri. CID is recognized as one of the leading institutions in the world which teaches deaf children. It emphasizes an oral program which prepares students for entry into mainstream society. When the grant was initially denied in 1978, the parents elected to send Marguerite back to CID for the 1978-79 school year at their own expense.

In determining how to fulfill its duty under G.S. 115-363, *et seq.* (1977) and 20 U.S.C. 1401, *et seq.*, the school system evaluated Marguerite's needs and, thereafter, determined if the Wilson School System could satisfy her needs. A committee formed to evaluate Marguerite developed an Individualized Education Program (IEP) for Marguerite which provided that she be placed in a regular sixth grade class with support services.

Being dissatisfied with the recommendation of the committee, the parents appealed the decision. The matter was heard on 11 October 1978 before George S. Willard, Jr., who affirmed the decision of the committee. The parents appealed that decision, and, at a State Review Hearing on 20 December 1978, the decision to place Marguerite in the Wilson School System was again affirmed. The parents then appealed that decision to the Superior Court of Wilson County. Judge Stevens, making findings of fact

and conclusions of law, affirmed the administrative decisions to place Marguerite in the public schools. From the adverse decision by the superior court, the plaintiff appeals to this Court.

## II

SCOPE OF REVIEW

Our scope of review on this appeal of an administrative agency decision is determined by the "issues presented for review by the appealing party." *Utilities Comm. v. Oil Co.*, 302 N.C. 14, 21, 273 S.E. 2d 232, 236 (1981).

In *Savings & Loan League v. Credit Union Comm.*, 302 N.C. 458, 463-64, 276 S.E. 2d 404, 408-09 (1981), our Supreme Court said:

Under the APA, a reviewing court's power to affirm the decision of the agency and to remand for further proceedings is not circumscribed. However, the court may reverse or modify only if

the substantial rights of the petitioners may have been prejudiced because the agency findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions; or

(2) In excess of statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Unsupported by substantial evidence admissible under G.S. 150A-29(a) or G.S. 150A-30 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

G.S. § 150A-51 (1978).

On this appeal, the plaintiff presents three arguments: (1) that during the assessment, evaluation and placement of Marguerite, the school committee did not comply with due process of the applicable federal and State regulations; (2) that the

IEP developed for Marguerite is not responsive to her special needs as required by federal and State statutes and regulations; and (3) that the school system failed to provide the most appropriate education for Marguerite. These arguments therefore present the following issues under G.S. 150A-51: (1) whether the actions of the school system were in violation of constitutional provisions; (2) whether the decision by the school system regarding an appropriate education for Marguerite was affected by error of law; (3) whether the decision was arbitrary and capricious; and (4) whether the decision was supported by substantial evidence.

III

APPROPRIATE EDUCATION

[1] We address first the plaintiff's argument that G.S. 115-363 (1977) and 20 U.S.C. 1401 *et seq.* require the local school agency to provide a handicapped student with the most appropriate education. We disagree.

G.S. 115-363 (1977) provides that "[t]he policy of the State is to provide a free appropriate publicly supported education to every child with special needs." The federal statute likewise provides that "[i]t is the purpose of this chapter to assure that all handicapped children have available to them, . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs. . . ." 20 U.S.C. 1400(c) (1982 Cum. Supp.). Title 16 of the North Carolina Administrative Code Chapter 2, subchapter E section 1501(c) provides that a free appropriate public education is special education related services which:

> (1) are provided at public expense, under public supervision and direction without charge;
>
> (2) meet the standards of the state education agency;
>
> (3) are provided in conformity with an individualized education program.

The federal statute defines free appropriate public education as special education and related services which

> (A) have been provided at public expense, under public supervision and direction, and without charge,

(B) meet the standards of the State Educational Agency,

(C) include an appropriate preschool, elementary, or secondary school education in the State involved, and

(D) are provided in conformity with the individualized education program required under section 1414(a)(5) of this title.

20 U.S.C. 1401 (18).

While there are no State cases interpreting our State provisions, the United States Supreme Court recently interpreted the federal provision to mean a free appropriate education, not the best or most appropriate education. *Board of Education v. Rowley*, 50 U.S.L.W. 4925 (28 June 1982). Specifically, with regard to the federal statute the *Rowley* Court said:

> When the language of the Act and its legislative history are considered together, the requirements imposed by Congress become tolerably clear. Insofar as a State is required to provide a handicapped child with a "free aproriate public education," we hold that it satisfies this requirement by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction. Such instruction and services must be provided at public expense, must meet the State's educational standards, must approximate the grade levels used in the State's regular education, and must comport with the child's IEP. In addition, the IEP, and therefore the personalized instruction, should be formulated in accordance with the requirements of the Act and, if the child is being educated in the regular classrooms of the public education system, should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade.

50 U.S.L.W. at 4932-33.

Although our statute was designed, in part, to bring the State in conformity with the federal statute, *see* G.S. 115-363 (1977), the *Rowley* Court's interpretation of Congress' intent does not control our interpretation of our General Assembly's intent. We believe that our General Assembly "intended to eliminate the effects of the handicap, at least to the extent that the child will be given an equal opportunity to learn if that is reasonably possi-

ble." *Rowley*, 50 U.S.L.W. 4925, 4936 (White, J., dissenting). Under this standard a handicapped child should be given an opportunity to achieve his full potential commensurate with that given other children.[1]

Nothing we have said, however, helps the plaintiff on the facts of this case. Our statute, as progressive as it may be, was not designed to require the development of a utopian educational program for handicapped students any more than the public schools are required to provide utopian educational programs for non-handicapped students. We believe that the Wilson County School System has fulfilled its obligation to provide Marguerite with a free, appropriate education. We, therefore, hold that the decision was not affected by error of law and overrule this assignment.

IV

DUE PROCESS

[2] Plaintiff argues that she was denied due process of law because she was not provided with a fair tribunal. Specifically, plaintiff argues that because of the presence and influence of Mildred Blackburn, a consultant for programs for the hearing impaired in the public schools of North Carolina with a preference for mainstreaming hearing impaired students rather than putting them in residential facilities, the conferences held to develop Marguerite's IEP were biased. Plaintiff further alleges that Ms. Blackburn's opinions, because of her position, were viewed as expert opinions and were given too much weight. Alleging that this bias prevented the committee from considering that the CID residential facility was the most appropriate place for her, the plaintiff contends that the rules and regulations under which the IEP were developed were also violated. We disagree.

First, the parties agreed at the hearing on 11 October 1978 that the required due process procedures had been adequately followed prior to and during the hearing. The State Review hear-

---

1. Chapter 115, under which this action was brought, was rewritten by Session Laws 1981, c 423, s.1, effective 1 July 1981, and has been recodified as Chapter 115C. In Chapter 115C, the General Assembly clearly spelled out its intent by declaring "that the policy of the State is to ensure every child a fair and full opportunity to reach his full potential. . . ." G.S. 115C-106.

ing officer found that all State and federal regulations had been followed in determining the needs of the child. No exception was taken to this finding. Further, the trial court found that the parents had been given notice of the hearings.

Due process requires that an individual receive adequate notice and be given an opportunity to be heard. *In re Moore*, 289 N.C. 95, 101, 221 S.E. 2d 307, 309 (1976). This requirement applies to administrative agencies performing adjudicatory functions. *Goldberg v. Kelly*, 397 U.S. 254, 25 L.Ed. 2d 287, 90 S.Ct. 1011 (1970); *Thomas v. Ward*, 529 F. 2d 916 (4th Cir. 1975). "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136, 99 L.Ed. 942, 946, 75 S.Ct. 623, 625 (1955). We are convinced that the notice requirements of due process were met in both the hearings below and in the adjudication in the superior court. We also find no merit to the plaintiff's claim that the "bias" of Mildred Blackburn resulted in a denial of due process.

The mere fact that a member of the panel which developed the IEP for Marguerite had expressed a certain professional opinion on mainstreaming versus residential placement does not result in a violation of due process. First, it is possible for members of boards or agencies to make policy decisions and later perform adjudicatory functions as well. "The fact that an administrative tribunal acts in the triple capacity of complainant, prosecutor and judge is not violative of the requirements of due process." 73 CJS Public Administrative Bodies and Procedure § 60, p. 385 (1951). In *Thompson v. Board of Education*, 31 N.C. App. 401, 230 S.E. 2d 164 (1976), *reversed on other grounds*, 292 N.C. 406, 233 S.E. 2d 538 (1977), this Court addressed the question of bias on the part of a school board charged both with determining if cause existed for suspension of a teacher and for thereafter determining if the teacher should be dismissed. In finding that no bias or violation of due process existed, the Court relied upon United States Supreme Court cases which addressed the issue of bias and prejudgment on the part of agency or board members.

In *Trade Comm. v. Cement Institute*, 333 U.S. 683, 92 L.Ed. 1010, 68 S.Ct. 793 (1948), members of the Commission who had investigated the pricing system of the respondent and suggested that it was illegal were asked to disqualify themselves. The

Supreme Court stated that there was no need for them to do so; the fact that the commissioners had formed an opinion as a result of their prior investigation did not mean that they could not later render an objective opinion. 333 U.S. at 702, 92 L.Ed. at 1035, 68 S.Ct. at 804. The court analogized the role of the Commissioners to that of a trial judge. It reasoned that due process would not require a judge to recuse himself simply because he had expressed an opinion on certain types of conduct. *Id.* at 702-03, 92 L.Ed. at 1035, 68 S.Ct. at 804. In *Hortonville District v. Hortonville Education Assoc.*, 426 U.S. 482, 49 L.Ed. 2d 1, 96 S.Ct. 2308 (1976), the Supreme Court rejected the claim of bias by discharged striking teachers that the School District could not terminate their employment since the Board had been involved as a negotiator during the teacher strike. The Court stated that the fact that the Board was involved in the collective bargaining process did not "overcome the presumption of honesty and integrity in policymakers with decisionmaking powers," and that this involvement was not "the sort of bias" that had disqualified other decisionmakers as a matter of federal due process. *Id.* at 496-97, 49 L.Ed. 2d at 11-12, 96 S.Ct. at 2316.

In the case *sub judice*, Mildred Blackburn participated on the committee to determine Marguerite's IEP. She expressed views against residential placement for children such as Marguerite. This view was contrary to that presented by Marguerite's mother. Mainstreaming and residential placements were two of the alternatives considered by the committee. First, viewing the record under the whole record test, we find that there is competent, material and substantial evidence to support the decision below. Second, the degree of involvement, prejudgment and predisposition of Mrs. Blackburn was far less assuming than that of the FTC Commissioners in *Cement Industries* and of the School Board in *Hortonville Education Assoc.* In view of *Cement Industries* and *Hortonville Education Assoc.*, we find that the predisposition or professional theory which Mrs. Blackburn had, and brought to the Committee, was not enough to constitute bias and a violation of due process.

## V

### COMPLIANCE WITH STATE AND FEDERAL RULES AND REGULATIONS

[3] We have carefully reviewed the record and find that the school system substantially complied with the relevant federal and State rules and regulations in the development of an IEP for Marguerite. Because we so find, we also find no merit to plaintiff's arguments (1) that she was denied due process of the law due to noncompliance with those regulations; (2) that the decision was not supported by substantial evidence under the whole record test; and (3) that the decision was arbitrary and capricious.

The applicable regulations require that a child for whom special education is provided be identified and evaluated before such services are provided. 16 NCAC 2E.1510. For the hearing impaired student the following screening and evaluation procedures are required:

(a) required screening or evaluation before placement:

(i) education evaluation,

(ii) speech/language evaluation,

(iii) audiological evaluation,

(iv) otological evaluation,

(v) vision screening;

(b) recommended screening or evaluation before placement:

(i) medical screening,

(ii) psychological evaluation,

(iii) adaptive behavior evaluation,

(iv) ophthalmological or optometric evaluation.

16 NCAC 2E.1510(3). After the screening and evaluation has been completed, an IEP must be developed for each child within thirty days of the determination that the child is to receive special educational programs or services. 16 NCAC 2E.1512(g)(3). The IEP is developed by the local educational agency which provides the service to the student. "The entire school-based committee may

or may not be involved." 16 NCAC 2E.1512(b). Chapter 16 of the North Carolina Administrative Code section 2E.1512(b) provides that the persons charged with developing the IEP must include a representative of the local educational agency other than the child's teachers, the child's teacher, the parents, and when appropriate, the child. *See also* 34 C.F.R. 300.344 (1978). However, 16 NCAC 2E.1512(b)(7) provides that:

> For a child with special needs who has been evaluated for *the first time*, the local education agency shall have:
>
> (A) a member of the evaluation team participate in the Individualized Education Program meeting, or
>
> (B) a representative of the local education agency, a child's teacher, or some other person present at the meeting who is knowledgeable about the evaluation procedures used with the child and who is familiar with the results of the evaluation. [Emphasis added.]

Further, the IEP must include the following goals and objectives:

> (1) a statement of the child's present levels of educational performance;
>
> (2) a statement of annual goals;
>
> (3) a statement of short-term instructional objectives;
>
> (4) a statement of specific education and related services to be provided to the child;
>
> (5) a description of the extent to which the child will participate in regular education programs and a description of the program to be provided;
>
> (6) the projected dates for initiation of services and the anticipated duration of services;
>
> (7) objective criteria, evaluation procedures, and schedules for determining, on at least an annual basis, whether the short-term instructional objectives are being achieved.

16 NCAC 2E.1512(c). *See also* 34 C.F.R. 300.346 (1978).

Upon review of the record in this case, we find that the Wilson School System conducted the required screening and

evaluation of Marguerite. The IEP committee consulted the following: Paul Speziale, a psychologist; Ray Lamm, Director of Instruction; Rosalie Wooten, Exceptional-Children Teacher; Annie Dickets, a regular Administrative Committee member; Mildred Blackburn, Consultant for the Hearing-Impaired Child, State Department of Public Instruction; Danny Hutto, Assistant Superintendent; Sandra Simmons, Staff Member at Eastern North Carolina School for the Deaf; Diane Parker, Director of Programs for Exceptional Children; Connie Michels, Coordinator of Programs for Hearing-Impaired, Atlantic Christian College; and Irene Harrell, parent. It is noted that not all of the persons listed above attended every conference. The IEP Committee consisted of Diane Parker, Martha Wrenn, and Paul Speziale, who consulted Mrs. Harrell.

The conference reports indicate that several alternatives were discussed at meetings held on 11 August, 22 August, and 28 August 1978 before it was determined that Marguerite should be placed in a regular classroom with support services. The records also show that the observation, assessment and testing to determine Marguerite's needs were all done between 27 July 1978 and 17 August 1978; that the IEP was developed as a result of meetings on 22 August and 28 August 1978; and that the committee made its recommendation on 28 August 1978. Further, our review of the IEP reveals that it includes the goals and objectives required by NCAC 2E.1512(c) and 34 C.F.R. 300.346 (1978). It is clear to us that the school system complied with the applicable regulations.

The plaintiff argues that the school system made a decision to mainstream Marguerite and then proceeded to develop an IEP to suit the mainstreaming. That is, what was offered the plaintiff was what the school system could provide, not what the plaintiff needed. This, the plaintiff maintains, was arbitrary and capricious. We find no merit in this argument. The record indicates that an evaluation was performed prior to a determination of what Marguerite's needs were. Based on the evaluation and assessment the committee determined that Marguerite could be served by enrollment in a regular sixth grade class with support services.

In addition, the decision to place Marguerite in a regular sixth grade classroom is consistent with policies established in

federal and State regulations that handicapped children be educated along with the non-handicapped to the extent possible. *See* 20 U.S.C. § 1412(5)(B); and 16 NCAC 2E.1515(a). This policy has a rational basis to promote a valid state goal; it does not violate due process. Therefore, we do not find this decision to be arbitrary and capricious.

The plaintiff argues that the decision by the school system was erroneous because the school system did not consider Marguerite's records from the CID and because it only used the Peabody Individual Achievement Test. We find no merit in this argument. First, the hearing officer who affirmed the school committee's decision had before him numerous exhibits offered by the plaintiff. Among those exhibits were Marguerite's report cards from CID, an IEP prepared by the private school, and several publications regarding education of deaf children. In addition, the hearing officer considered, and included in his findings of facts, the reports from the Coordinator of the Hearing Impaired Program at Atlantic Christian College, and from an audiologist at East Carolina University. The hearing officer, after considering that evidence and the evidence presented by the school system, issued a Decision and Rationale, which affirmed the placement determination of the school system.

In addition, the regulations do not require, as plaintiff suggests, that the records from the CID, her report cards, and work samples be considered by the committee as it reached its decision. The statutes and regulations require that a multi-disciplinary diagnosis and evaluation be performed by the school system. G.S. 115-375; 16 NCAC 2E.1510. This the school system did. Significantly, the trial court made the following findings of fact to which no exception was made and which are supported by substantial evidence in view of the entire record:

> 5. At a conference on July 27, 1978, including, among others, Dr. W. O. Fields, Superintendent of the school system, and Mrs. Harrell, it was determined that it would be necessary to evaluate Marguerite to determine if the school system could furnish her with an appropriate educational program.
>
> 6. A multi-disciplinary diagnosis and evaluation of Marguerite was made by the respondent. She was assessed

in all areas related to her disability. The respondent conducted conferences on August 11, 14, 22 of 1978 with the petitioners and various educational experts. After the conferences had been concluded, an individualized education program was developed for the child by the School System.

Further, the local hearing officer also made extensive findings of fact which supported the decision to place Marguerite in a regular sixth grade class.

The plaintiff also argues that the IEP is unresponsive to her needs. Specifically, she argues that the IEP was incomplete in that it did not include a statement of the educational services to be provided for the child and a description of the extent to which the child will be in the regular classroom. The IEP states that the percentage of time to be spent in the classroom and with resource persons was "to be determined by child's needs." While a more specific determination of the above requirements is desired, it is our opinion that on the facts of this case, the answers were sufficient. We note that this IEP was developed between 22 August and 28 August 1978, and that the initial request for funds was not made until 17 July 1978 for the 1978-79 school year. We believe that the school board acted diligently and in good faith in evaluating Marguerite's needs and developing the IEP within this relatively short period of time. We also note that the trial court found that Marguerite was enrolled in the Wilson School System in September 1980 and that she is progressing with her studies.

For the foregoing reasons, the judgment below is

Affirmed.

Judge HILL concurs.

Judge WELLS concurs in the result.