IN RE: ARCHIBALD CARTER MAGEE, M.D.

No. 8710SC194

(Filed 1 December 1987)

**1. Physicians, Surgeons and Allied Professions § 6.1— automatic suspension of license for mental incompetency — continuance upon different grounds without notice or hearing**

There is no statutory authority which allows the Board of Medical Examiners to continue, either permanently or indefinitely, the deprivation of a license, begun as an automatic suspension for mental incompetency, upon totally different grounds, without notice of those grounds or an opportunity to be heard; therefore, the trial court properly remanded this matter for a new hearing based on proper procedure where the Board of Medical Examiners denied appellant doctor reinstatement of his license upon grounds of which he had no notice and upon which no hearing was conducted.

**2. Physicians, Surgeons and Allied Professions § 6.1— reinstatement of license suspended for mental incompetence — remand of case for establishment of rules and procedures**

The trial court properly directed the Board of Medical Examiners to establish rules and procedures relating to reinstatement of licenses automatically suspended upon an adjudication of mental incompetency.

**3. Judgments § 2.1— portion of order signed out of session and county and without parties' agreement — order void**

Because it was signed out of session, out of the district and the county, and without agreement of the parties, that portion of the trial court's amended order awarding costs and attorney fees is void.

APPEAL by both parties, Archibald Carter Magee, M.D. and the Board of Medical Examiners of the State of North Carolina, from *Brannon, Judge.* Order entered 2 December 1986 in Superior Court, CUMBERLAND County.[1] Heard in the Court of Appeals on 24 September 1987.

---

1. The original order was entered 26 June 1986 in Wake County and signed out of session in Durham County on 4 November 1986 by and with the consent of the parties. Thereafter, the amended order appealed from was signed out of session in Cumberland County.

*Bailey, Dixon, Wooten, McDonald, Fountain, and Walker, by Wright T. Dixon, Jr. for Archibald Carter Magee, M.D., appellant/appellee.*

*Smith, Anderson, Blount, Dorsett, Mitchell, and Jernigan, by Michael E. Weddington and Susan M. Parker for the Board of Medical Examiners of the State of North Carolina, appellant/appellee.*

BECTON, Judge.

This appeal arises from efforts by Archibald Carter Magee, M.D. to have his suspended license to practice medicine reinstated. Magee petitioned for judicial review of a decision of the North Carolina Board of Medical Examiners (the Board) denying reinstatement of his license, and a hearing was held 26 June 1986. Both Magee and the Board appeal from an amended order of the trial court, entered 2 December 1986, which directed that the matter be remanded to the Board for rehearing and instructed the Board to pay costs and attorneys fees. For the reasons discussed hereafter, the order is affirmed insofar as the rehearing is concerned and reversed as to the award of costs and attorneys fees.

I

In January of 1983, Magee pleaded not guilty by reason of insanity to criminal assault charges, and was subsequently adjudicated mentally incompetent, due to drug and alcohol abuse, and involuntarily committed to a psychiatric hospital for treatment. In consequence, the Medical Board notified Magee, on 2 March 1983, that his medical license was automatically suspended pursuant to N.C. Gen. Stat. Sec. 90-14(a)(10) (1981).

Following months of hospitalization, Magee was found mentally competent at a hearing on 1 September 1983 and was released from the hospital. In November 1983, Magee asked the Board to reinstate his medical license, and the Board responded, by letter dated 14 December 1983, requesting Magee to "furnish the Board with a report from a psychiatrist stating that you are mentally competent to practice medicine." Thereafter, in February and June of 1984, statements of two doctors furnished by Magee as to his mental competence were consecutively found by the Board to be insufficient to satisfy its demand.

Magee next offered to the Board a letter report, dated 25 July 1985, from his then current psychiatrist, Dr. Robert A. Fleury, which stated that medical licensure was reasonable for Magee under specific conditions such as life-long regular attendance at Alcoholics Anonymous and regular outpatient psychiatric care for at least a year. Without notice or a hearing, the Board, on 9 August 1985, voted to deny reinstatement of Magee's license.

On 10 September 1985, Magee formally requested a hearing before the Board on the grounds that he had documented his sound mind and mental competence to practice medicine as required by the Board. A hearing was held 2 December 1985 at which the evidence consisted of testimony by Magee and by Dr. Fleury, primarily relating to Magee's mental competence, efforts at rehabilitation, and continued medical education since the suspension. In an order signed 13 January 1986, the Board included findings of fact concerning Magee's history of substance abuse, the length of time since Magee had practiced medicine, and the events of June 1982 out of which the criminal assault charges arose, and, based on these findings, concluded that grounds existed to deny issuance of a license under N.C. Gen. Stat. Sec. 90-14(a)(5), (6) and (11).

The Board's decision was reviewed by Judge Anthony M. Brannon at a hearing in Wake County Superior Court on 26 June 1986. Judge Brannon then announced in open court that he would not rule upon the contentions of the parties nor consider the issue of attorneys fees, and ordered the case remanded to the Board for a hearing de novo to be held in accordance with appropriate regulations and procedures to be adopted by the Board. He requested both parties to submit proposed orders embodying his oral ruling to be signed out of session; and, on 4 November 1986 in Durham, North Carolina, without further hearing, he signed an order prepared by Magee's counsel. That order included findings of fact and concluded as a matter of law, in part, that the Board had violated Magee's constitutional right to due process of law, and further, that the amount of Magee's attorneys fees should be "left for determination at a later date."

Thereafter, the Board filed a proposed amended order, contending that the 4 November order, as drawn, went beyond the intent of the Court and contained findings of fact inconsistent

with the concept of a hearing *de novo*. Among other changes, the proposed order deleted all findings of fact relating to the merits of the case and all reference to attorneys fees. On 2 December 1986, in Fayetteville, where he was presiding at a session of Cumberland County Superior Court, Judge Brannon heard argument on the Board's motion to amend the 4 November order, and entered an amended order remanding the matter and awarding to Magee costs and attorneys fees of $13,136.25.

## II

In the Record on Appeal, Magee assigned as error (1) the action of the Superior Court in striking the 4 November 1986 order, and (2) the Court's failure to order reinstatement of his license. However, because neither the assignments of error nor their supporting exceptions are set forth or argued in Magee's brief, they are taken as abandoned. *See* Rule 28, North Carolina Rules of Appellate Procedure; *Brown v. Neal*, 283 N.C. 604, 197 S.E. 2d 505 (1973); *Lloyd v. Carnation Co.*, 47 N.C. App. 203, 266 S.E. 2d 722 (1980). Accordingly, we limit our review to the two issues raised by the Board's appeal, namely, (1) whether the trial court erred by remanding the matter to the Board for a hearing *de novo*, and (2) whether the award of attorneys fees was proper.

## III

In the trial court's order that the matter be remanded for a hearing *de novo*, the court further directed that

> . . . before conducting such hearing *de novo*, the Board shall adopt appropriate regulations addressing both (i) how a Board licensee whose license has been automatically suspended under N.C. Gen. Stat. Sec. 90-14(a)(10) should proceed to seek reinstatement of his license, and (ii) the procedures for hearing before the Board, the adoption of such regulations to be accomplished by the Board as soon as reasonably possible consistent with applicable statutory requirements . . . .

The Board contends that the trial court was without authority to either order a hearing *de novo* or to direct the Board to adopt regulations and procedures. Specifically, the Board maintains that the reissuance of a medical license after suspension is wholly and adequately governed by the Medical Practice Act (MPA), N.C. Gen. Stat. Secs. 90-1 *et seq.*; that pursuant to N.C.

Gen. Stat. Sec. 90-14(a), the Board's decision to deny reinstatement of Magee's license was solely within its discretionary authority; and that the decision was supported by the evidence before it and was not the product of an abuse of discretion. On the other hand, Magee argues, in part, that the Administrative Procedure Act (APA), Chapter 150A of the General Statutes,[2] requires the Board to have established regulations and procedures for lifting a suspension imposed under G.S. Sec. 90-14(a)(10); that at the time Magee sought reinstatement of his license, the Board lacked such regulations and procedures, and imposed upon Magee arbitrary *ad hoc* requirements for reinstatement; and that the procedure followed by the Board was constitutionally defective.

A

[1] Procedural due process requires that an individual receive adequate notice and a meaningful opportunity to be heard before he is deprived of life, liberty, or property. *See, e.g., Harrell v. Wilson County Schools,* 58 N.C. App. 260, 266, 293 S.E. 2d 687, 691, *disc. review denied and appeal dismissed,* 306 N.C. 740, 295 S.E. 2d 759 (1982), *cert. denied,* 460 U.S. 1012, 75 L.Ed. 2d 481 (1983). This requirement applies to administrative agencies performing adjudicatory functions. *See Goldberg v. Kelly,* 397 U.S. 254, 25 L.Ed. 2d 287 (1970); *Harrell.* Further, a professional license is a protected property interest. *See, e.g., Barry v. Barchi,* 443 U.S. 55, 61 L.Ed. 2d 365 (1979); *Beauchamp v. De Abadia,* 779 F. 2d 773 (1st Cir. 1985); *Keney v. Derbyshire,* 718 F. 2d 352 (10th Cir. 1983).

In this case, the Board, in its communications with Magee, led him to believe that reinstatement of his license was dependent upon adequate proof of his mental competence. Yet, the Board's decision to deny reinstatement was based upon three other grounds, including unprofessional conduct and lack of professional competence, of which Magee had no prior notice and no meaningful opportunity to be heard.

In addition, we disagree with the Board's contention that, under the Medical Practice Act, the Board has complete statutory

2. The APA was revised and recodified as Chapter 150B of the General Statutes as of 1 January 1986. Chapter 150A was in force at the time of the 2 December 1985 Board hearing.

discretion to deny or limit permission to resume the practice of medicine once a physician's right to practice has been terminated "by any action or for any period of time." N.C. Gen. Stat. Sec. 90-14(a) lists thirteen grounds upon which the Board may "deny, annul, suspend, or revoke" a license to practice medicine. Among these grounds is "[a]judication of mental incompetency, which shall automatically *suspend* a license unless the Board orders otherwise." Sec. 90-14(a)(10) (emphasis added). Section 90-14(a) further provides:

> For any of the foregoing reasons, the Board may *deny* the issuance of a license to an applicant or *revoke* a license issued to him, may *suspend* such a license *for a period of time*, and may impose conditions upon the continued practice after such period of suspension as the Board may deem advisable, may limit the accused physician's practice of medicine with respect to the extent, nature or location of his practice as the Board deems advisable. *The Board may in its discretion* and upon such terms and conditions and for such period of time as it may prescribe, *restore a license so revoked or rescinded.*

In addition, Section 90-14.2 requires that the Board give a licensee "written notice indicating the general nature of the charges, accusation, or complaint made against him" and a public hearing "concerning such charges or complaint," *before* the Board may "revoke, restrict, or suspend any license granted by it." Similarly, Section 90-14.1 provides for notice of the reasons and a hearing whenever an applicant is denied issuance of a license. Considered together, these sections reflect a clear legislative intent that no applicant or licensee be denied the right to practice medicine for any reason without notice of the grounds and an opportunity to be heard by the Board. The sole exception is an automatic suspension based on an adjudication of mental incompetency pursuant to Section 90-14(a)(10).

Although, as the legislature recognized, the Board may reasonably rely upon an adjudication of mental incompetency by a competent tribunal as conclusive evidence of unfitness to practice medicine so as to support a suspension, it would be unreasonable, in our opinion, for the Board to continue the deprivation of a license in reliance upon such an adjudication which is no longer

in force but has been superseded by a subsequent adjudication of restored mental competency. And, in fact, the Board did not do so. However, although the Board is clearly authorized to deny reinstatement on *other grounds*, we are convinced that it may not do so without providing proper notice of those grounds and a hearing thereon.

We find it significant that, under Section 90-14(a)(10), an adjudication of mental incompetence merely *suspends* a license. The legislature is presumed to have used the words of a statute to convey their natural and ordinary meaning. *E.g., Wood v. J. P. Stevens & Co.*, 297 N.C. 636, 256 S.E. 2d 692 (1979). Further, in the absence of a contrary indication, it is presumed that no word of a statute is a mere redundant expression but was intended to add something to the meaning of the statute. *LaFayette Transportation Service, Inc. v. Robeson County*, 283 N.C. 494, 196 S.E. 2d 770 (1973).

Among the disciplinary actions available to the Board under Section 90-14(a) are both the options to *revoke* or to *suspend* a license. While *revoke* and *rescind* mean "to make void," "annul," or "repeal," connoting a total, permanent deprivation, *suspend* means "to cause to stop for a period" or "to render temporarily ineffective," connoting a deprivation of limited duration. *See* The American Heritage Dictionary (2d ed. 1985). The distinction is supported by the language of Section 90-14(a) which states that the Board may suspend a license "for a period of time." On the other hand, the last sentence of that Section, upon which the Board relies, grants to the Board discretion to restore, on such terms and for such period of time that it chooses, only licenses which have been "revoked or rescinded." Because a valid revocation or rescission must follow proper notice and a hearing under N.C. Gen. Stat. Sec. 90-14.2, the exercise of reasonable discretion in restoring a revoked license ordinarily will not violate due process. We find nothing in the statutory scheme, however, which would allow the Board to continue, either permanently or indefinitely, the deprivation of a license, begun as an automatic suspension for mental incompetency, upon totally different grounds, without notice of those grounds or an opportunity to be heard.

For these reasons, we conclude that the action of the Board in denying reinstatement of his license upon grounds of which

Magee had no notice and upon which no hearing was conducted violated due process and exceeded the Board's statutory authority. Moreover, the trial judge obviously ordered this matter remanded due to his belief that the Board's actions were procedurally defective and because he declined, quite properly, to substitute his own judgment for the expert judgment of the Board regarding Magee's qualification to practice medicine. Consequently, we hold that the trial court did not err in remanding the matter for a new hearing based on proper procedure.

B

[2]　We are also convinced that the trial court's direction to the Board to establish rules and procedures relating to reinstatement of licenses automatically suspended under Section 90-14(a)(10) was proper.

The Administrative Procedure Act applies to the Board of Medical Examiners "except to the extent and in the particulars that any statute makes specific provisions to the contrary," N.C. Gen. Stat. Sec. 150A-1 (1983), and thus supplements the provisions of the Medical Practice Act to the extent that it is broader than that statute. Section 150A-11 requires every administrative agency subject to the APA to "[a]dopt rules of practice setting forth the nature and requirements of all formal and informal procedures available. . . ." As previously discussed, provisions of the MPA supply procedures for the Board to follow whenever it denies issuance of a license, see Section 90-14.1, or whenever it revokes, suspends, or restricts a license, see Section 90-14.2. However, the MPA provides no specific procedure for reinstatement of a license which has been automatically suspended pursuant to Section 90-14(a)(10). In our opinion, the Board is required by Section 150A-11 of the APA, under these circumstances, to fill this gap in the MPA by establishing regulations and procedures which are consistent with the spirit of the MPA and the APA and afford procedural protection to suspended licensees. The trial court thus acted within its authority in directing the Board to do what it had a statutory obligation to do.

IV

[3]　The Board next argues that the award of costs and attorneys fees to Magee was erroneous because (1) it was not authorized by

statute, (2) it was contrary to the express terms of N.C. Gen. Stat. Sec. 6-19.1, the statute upon which the trial court relied, and (3) it was entered out of session, out of the district, and without the consent of the parties. Because we agree that Judge Brannon lacked jurisdiction to enter that portion of the amended order awarding attorneys fees, we deem it unnecessary to reach the Board's statutory arguments.

The general rule concerning judgments and orders is that

[j]udgments and orders substantially affecting the rights of parties to a cause pending in the Superior Court at a term must be made in the county and at the term when and where the question is presented, and . . . *except by agreement of the parties* or by reason of some express provision of law, they cannot be entered otherwise, and assuredly not in another district and without notice to the parties interested.

*State v. Boone,* 310 N.C. 284, 287, 311 S.E. 2d 552, 555 (1984) (emphasis added). This rule has been applied consistently in both criminal and civil cases. *Id.*

Judge Brannon's first ruling in this matter was made during the 23 June 1986 session of Wake County Superior Court, in the Tenth Judicial District. The amended order was signed 2 December 1986 in Fayetteville, North Carolina, in the Twelfth Judicial District, and was thus obviously entered out of session and out of the county and the district in which the matter was presented.

Although it appears from the record that the parties agreed that a written order prepared in accordance with the Court's announced ruling could be signed by Judge Brannon after the conclusion of the session and out of the district, it further appears that Judge Brannon's oral ruling did not include an award of attorneys fees and that there was thus no consent to that portion of the amended order. In fact, the initial 4 November 1986 order specifically ordered, "that the decision on the award of attorney fees is hereby deferred until such time as a proper hearing has been held."

Nor does it appear that the hearing on the Board's motion to amend the 4 November 1986 order constituted a "proper hearing" on attorneys fees. Although the court admitted in evidence an "Affidavit of Services Performed," apparently neither the pro-

priety of any award nor the reasonableness of the amount was ever raised or argued before the Court.

We hold that, because it was signed out of session, out of the district and the county, and without agreement of the parties, that portion of the amended order awarding costs and attorneys fees is void.

## V

For the reasons stated, the trial court's direction that this matter be remanded to the Board for a hearing *de novo* is affirmed and that portion of the order directing the Board to pay costs and attorneys fees is reversed.

Affirmed in part and reversed in part.

Judges JOHNSON and PARKER concur.