STATE ex rel. UTIL. COMM'N v. CAROLINA INDUS. GROUP

[130 N.C. App. 636 (1998)]

STATE OF NORTH CAROLINA ex rel. UTILITIES COMMISSION; CAROLINA POWER
& LIGHT COMPANY, and PUBLIC STAFF-NORTH CAROLINA UTILITIES COM-
MISSION, Respondents v. CAROLINA INDUSTRIAL GROUP FOR FAIR UTILITY
RATES, Petitioner/Complainant

No. COA97-498

(Filed 1 September 1998)

### 1. Utilities— petition to investigate utility's rates—denial without hearing—fact issues not resolved

The Utilities Commission did not improperly resolve issues
of fact without benefit of a hearing in denying a petition to inves-
tigate an electric utility's present rates and declining to proceed
with the matter as a complaint where the Commission acknowl-
edged that complainant's filings presented questions of fact but
specifically refrained from answering those questions and found
that no reasonable grounds existed for investigating the utility's
rates; and the Commission stated in its order that it considered
only the "petition on its face" and "matters within the judicial
knowledge of the Commission."

### 2. Utilities— utility's return on equity—dismissal of com-plaint—notice and opportunity to be heard

The Utilities Commission complied with statutory and proce-
dural due process requirements of notice and an opportunity to
be heard before a complaint is dismissed where the complainant
was given the opportunity to submit a written response to the
Commission's tentative decision that reasonable grounds did not
exist to investigate the complaint about an electrical utility's
return on equity before that decision became final.

### 3. Evidence— judicial notice—trend in electrical utility industry

The Utilities Commission did not err in taking judicial notice
of the current restructuring trend in the electrical utility industry.
N.C.G.S. § 8C-1, Rule 201(b).

### 4. Utilities— utility's return on equity—dismissal of peti-tion—not arbitrary or capricious

The Utilities Commission's failure to initiate a ratemaking or
complaint proceeding concerning an electric utility's return on
equity (ROE) was not arbitrary or capricious where the com-
plainant alleged that the utility had been overearning its author-

STATE EX REL. UTIL. COMM'N v. CAROLINA INDUS. GROUP

[130 N.C. App. 636 (1998)]

ized ROE of 12.75%, but the Commission found that regulatory ROEs are generally lower than the ROEs reported to the financial community, and that although the utility's ROE for a recent twelve-month period was 13.39%, the utility had reported twelve-month ROEs above 12.75% for only three of the thirty-two quarters since that rate was established.

Appeal by petitioner/complainant from orders entered 27 December 1996 and 6 February 1997 by the North Carolina Utilities Commission. Heard in the Court of Appeals 19 November 1997.

*Bailey & Dixon, L.L.P., by Ralph McDonald, Carson Carmichael, III, and Denise Stanford Haskell, for petitioner/complainant-appellant.*

*Carolina Power & Light Company, by Associate General Counsel Len S. Anthony, for respondent-appellee Carolina Power & Light Company.*

*Public Staff Legal Division, by A. W. Turner, for respondent-appellee Public Staff-North Carolina Utilities Commission.*

TIMMONS-GOODSON, Judge.

Petitioner/complainant, Carolina Industrial Group For Fair Utility Rates (CIGFUR), appeals from orders issued by the North Carolina Utilities Commission (the Commission) denying CIGFUR's Petition for Initiation of Investigation of Existing Rates and Complaint concerning the current rates of Carolina Power & Light Company (CP&L). For the reasons set forth below, we affirm the orders of the Commission.

On 19 July 1996, CIGFUR filed a petition/complaint with the Commission seeking an investigation of CP&L's base rates or, in the alternative, to proceed as a complaint against CP&L pursuant to North Carolina General Statutes section 62-73. In the petition, CIGFUR alleges that on 5 August 1988, the Commission entered an order fixing CP&L's return on equity (ROE) at 12.75%, pursuant to a general rate case. CIGFUR further alleges that since the entry of the 5 August 1988 order, economic conditions have changed significantly, and thus, CP&L has been overearning its authorized ROE for a considerable period of time. On 29 July 1996, CP&L filed a response moving to dismiss CIGFUR's petition and complaint on the ground that CP&L has not been overearning. The Commission considered the

STATE ex rel. UTIL. COMM'N v. CAROLINA INDUS. GROUP

[130 N.C. App. 636 (1998)]

motion and, on 27 December 1996, issued an order denying CIGFUR's petition for investigation of CP&L's rates and tentatively finding no reasonable grounds to proceed with CIGFUR's alternative complaint regarding the level of CP&L's current rates. On 10 January 1997, CIGFUR filed an Objection to Procedure and Motion for Reconsideration as to the 27 December 1996 order, and on 6 February 1997, the Commission entered a further order overruling CIGFUR's objection and denying its motion to reconsider. CIGFUR appeals.

———————

"On appeal, a rate decision, rule, regulation, finding, determination, or order made by the Commission is deemed prima facie just and reasonable." *State ex rel. Utilities Comm. v. Public Staff*, 123 N.C. App. 43, 45, 472 S.E.2d 193, 195 (1996) (citing N.C. Gen. Stat. § 62-94(e)). Therefore, "[j]udicial reversal of an order of the Utilities Commission is a serious matter for the reviewing court," which may be justified only by strict adherence to the statutory guidelines governing appellate review. *Id.* at 45, 472 S.E.2d at 195-96 (quoting *Utilities Comm. v. Oil Co.*, 302 N.C. 14, 20, 273 S.E.2d 232, 235 (1981)).

North Carolina General Statutes section 62-94 articulates the scope of judicial review of an order issued by the Commission. Section 62-94 states that the reviewing court

(b) . . . may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions, or

(2) In excess of statutory authority or jurisdiction of the Commission, or

(3) Made upon unlawful proceedings, or

(4) Affected by other errors of law, or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted, or

(6) Arbitrary or capricious.

(c) In making the foregoing determinations, the court shall review the whole record or such portions thereof as may be cited by any party and due account shall be taken of the rule of prejudicial error.

N.C. Gen. Stat. § 62-94 (1989). In short, the role of the appellate court is to determine whether the entire record supports the Commission's decision, and where there are two reasonably conflicting views of the evidence, the appellate court may not substitute its judgment for that of the Commission. *State ex rel. Utilities Comm. v. Southern Bell*, 57 N.C. App. 489, 496, 291 S.E.2d 789, 793, *modified on other grounds*, 307 N.C. 541, 299 S.E.2d 763 (1983). Having articulated the appropriate standard of review, we turn now to the arguments advanced by CIGFUR.

[1] CIGFUR first argues that the Commission improperly resolved issues of fact without benefit of a hearing. CIGFUR contends that its petition/complaint and subsequent filings raised material questions of fact, which the Commission allegedly decided in its stated "reasons" for denying CIGFUR's petition to investigate CP&L's current rates and declining to proceed with the matter as a complaint. We disagree.

The Commission is vested with full power to regulate the rates charged by public utilities. N.C. Gen. Stat. § 62-30 (1989). Accordingly, "[t]he Commission shall from time to time as often as circumstances may require, change and revise or cause to be changed or revised any rates fixed by the Commission, or allowed to be charged by any public utility." N.C. Gen. Stat. § 62-130(d) (1989). Under North Carolina General Statutes section 62-73, an interested party may file a complaint with the Commission alleging that a utility rate is unjust or unreasonable. N.C. Gen Stat. § 62-73 (1989). Thereafter, the Commission must schedule a hearing, "[u]nless [it] shall determine, upon consideration of the complaint or otherwise, and after notice to the complainant and opportunity to be heard, that no reasonable ground exists for an investigation of such complaint." *Id.*

In the case before us, CIGFUR asserts that its petition/complaint raised the following factual issues:

a. Have economic conditions changed significantly since 1987/1988?

b. What is the appropriate return on equity (ROE) for CP&L under present economic conditions?

c. Is CP&L earning more than its authorized ROE?

d. What is the magnitude of CP&L's profits from bulk sales of power generated by plants included in rate base and to

STATE ex rel. UTIL. COMM'N v. CAROLINA INDUS. GROUP

[130 N.C. App. 636 (1998)]

what extent should these profits be returned to or shared by ratepayers?

e. Are CP&L's rates higher than is necessary for CP&L to continue to provide adequate service?

CIGFUR further argues that the Commission improperly resolved these issues in setting forth the following reasons for refusing to investigate CP&L's rates:

(2) The passage of time since CP&L's last rate case does not, standing alone, require an investigation of CP&L's rates.

(3) The fact that CP&L's rates are higher than those of another electric utility does not, standing alone, show that CP&L's rates are unjust or unreasonable.

. . .

(9) The electric utility industry in the United States is facing an unprecedented period of restructuring as a result of actions by various state and federal regulators to introduce increased competition in a field previously characterized by large vertically integrated monopolies. These actions have created greater uncertainty and risk than electric utilities have faced in decades. Until a new consensus is reached as to the structure of the electric utility industry, this uncertainty will tend to drive up the return expectations of electric utility investors and, all else being equal, to justify higher ROEs than were appropriate when the monopoly structure of the industry was unquestioned.

(10) The Public Staff has urged the Commission to proceed cautiously. The Public Staff warns that unintended consequences could flow from an investigation of CP&L's rates, such as a rate increase or a realignment of rates detrimental to non-industrial customers.

We are not persuaded by CIGFUR's argument, because the foregoing reasons do not finally resolve the issues raised by CIGFUR's filings. The Commission's reasons merely articulate the basis upon which it denied CIGFUR's petition/complaint. While the Commission acknowledged that CIGFUR's filings presented questions of fact, it specifically refrained from answering these questions and, instead, found that no reasonable ground existed for investigating CP&L's rates. As stated in its order, the Commission, in making this decision,

STATE EX REL. UTIL. COMM'N v. CAROLINA INDUS. GROUP

[130 N.C. App. 636 (1998)]

considered only the "petition on its face" and "matters within the judicial knowledge of the Commission." Therefore, we hold that the Commission did not improperly resolve the issues without benefit of a hearing. CIGFUR's argument, then, fails.

[2] Next, CIGFUR contends that the Commission erred in failing to follow the procedure established by section 62-73 of the North Carolina General Statutes, which states that a complaint may not be dismissed until the complainant receives notice and an opportunity to be heard. CIGFUR maintains that although it was afforded an opportunity to submit a written response to the Commission's decision tentatively dismissing the complaint, this opportunity was constitutionally inadequate and violated due process. We reject CIGFUR's argument and conclude that due process was upheld in this instance.

As previously stated, section 62-73 of the General Statutes applies to complaint proceedings whereby an interested party challenges the justness or reasonableness of a utility rate. See N.C.G.S. § 62-73. Upon considering the complaint, the Commission must set the matter for hearing, unless it determines, after notice to the complainant and an opportunity to be heard, that no reasonable ground exists to investigate the complaint. Id.

In this case, the Commission provisionally concluded, in its 27 December 1996 order, that there were no reasonable grounds to proceed with CIGFUR's petition as a complaint. Nevertheless, the Commission allowed CIGFUR an opportunity to file comments and a motion to reconsider the Commission's decision. CIGFUR, indeed, availed itself of this opportunity and, on 10 January 1997, filed its Comments, Motion for Reconsideration and For Extension of Time For Filing Notice of Appeal, and Objection to Procedure. Nothing in section 62-73 suggests that the legislature intended to grant a complainant the right to a formal hearing on the issue of whether reasonable grounds exist to investigate the complaint. Hence, we are of the opinion that the opportunity given CIGFUR to submit written objections to the Commission's decision satisfied the requirements of section 62-73.

Similarly, we conclude that the proceedings at issue in this case did not compromise CIGFUR's right to procedural due process. The primary requirement of due process in a proceeding that is to be deemed final is "that an individual receive adequate notice and a meaningful opportunity to be heard" before being deprived of life, lib-

erty, or property. *In re Magee*, 87 N.C. App. 650, 654, 362 S.E.2d 564, 566 (1987). Although "[t]his requirement applies to administrative agencies performing adjudicatory functions," *Harrell v. Wilson County Schools*, 58 N.C. App. 260, 266, 293 S.E.2d 687, 691 (1982) (citations omitted), the Commission's decision declining to treat CIGFUR's petition as a complaint did not constitute a deprivation of life, liberty, or property. Therefore, CIGFUR's due process rights were not infringed, and this argument also fails.

**[3]** CIGFUR further argues that the Commission erred in taking judicial notice of certain facts in violation of North Carolina General Statutes section 62-65(b). In particular, CIGFUR challenges the Commission's formal acknowledgment of a general industry trend as outside the scope of matters that may be judicially noticed. We must disagree.

Judicial knowledge is "[k]nowledge of that which is so notorious that everybody, including judges, knows it, and hence need not be proved." BLACKS LAW DICTIONARY 761 (5th ed. 1979). Section 62-65(b) of our General Statutes provides that:

> [t]he Commission may take judicial notice of its decisions, the annual reports of public utilities on file with the Commission, published reports of federal regulatory agencies, the decisions of State and federal courts, State and federal statutes, public information and data published by official State and federal agencies and reputable financial reporting services, generally recognized technical and scientific facts within the Commission's specialized knowledge, and such other facts and evidence as may be judicially noticed by justices and judges of the General Court of Justice.

N.C. Gen. Stat. § 62-65 (1989). Furthermore, under Rule 201 of the North Carolina Rules of Evidence, the Commission, sitting as a trial tribunal, may judicially notice facts that are "not subject to reasonable dispute in that [they are] either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." N.C.R. Evid. 201(b).

In the instant case, CIGFUR maintains that the Commission acted *ultra vires* in taking judicial notice of an industry trend. In its order declining to investigate CP&L's rates, the Commission observed that:

[there is a] general trend of changes underway in the electric utility industry in the United States. The industry is facing an unprecedented period of restructuring as various state and federal regulators move to introduce increased competition in a field previously characterized by large vertically integrated monopolies. These actions have created greater uncertainty and risk than the electric utilities have faced in decades. Until a new consensus is reached as to the structure of the electric utility industry, this uncertainty will, all else being equal, tend to drive up the return expectations of electric utility investors and to justify higher ROEs than would be appropriate were the monopoly structure of the industry unquestioned.

This Court held in *Walker v. Walker*, 63 N.C. App. 644, 306 S.E.2d 485 (1983), that a trial court did not abuse its discretion in taking judicial notice of the then-existing inflationary economic trend. Applying similar reasoning, we hold that the Commission did not act arbitrarily in judicially noticing the current restructuring trend in the electric utility industry. The reality of this trend is "not subject to reasonable dispute," because it is "generally known" within the industry. N.C.R. Evid. 201(b). Therefore, the requirements for judicial notice are met, and CIGFUR's argument is unsuccessful.

**[4]** Lastly, CIGFUR contends that the Commission erred in concluding that there were no reasonable grounds for an investigation of its complaint. CIGFUR argues that the language of section 62-130(d) of the North Carolina General Statutes imposes a mandatory duty on the Commission to revise rates as often as is dictated by the circumstances. Thus, CIGFUR asserts that the Commission's failure to initiate a ratemaking or complaint proceeding was arbitrary and capricious. We cannot agree.

As noted by our Supreme Court in *Utilities Commission v. Morgan, Attorney General*, 278 N.C. 235, 179 S.E.2d 419 (1971),

It is impossible to fix rates which will give the utility each day a fair return, and no more, upon its plant in service on that day. The best that can be done, both from the standpoint of the company and from the standpoint of the person served, is to fix rates on the basis of a substantial period of time. Otherwise, rate hearings and adjustments would be a perpetual process.

*Id.* at 239, 179 S.E.2d at 421-22. In the present case, the Commission gave the following pertinent reasons supporting its decision to refrain from investigating CP&L's rates:

STATE EX REL. UTIL. COMM'N v. CAROLINA INDUS. GROUP

[130 N.C. App. 636 (1998)]

(4) CIGFUR concedes that regulatory ROEs are generally lower than the ROEs reported to the financial community.

(5) Based upon the 12-month period ending June 30, 1996, the ROE that CP&L realized from its North Carolina jurisdictional operations was in the range of 13.39%, but for the 32 quarters from the time of CP&L's 1988 rate case through June 1996, CP&L reported 12-month ROEs above 12.75% for only three quarters. Before this year, CP&L had not exceeded its authorized ROE since 1991.

(6) ROEs inevitably vary from year to year depending on the general economy, the local economy, conditions specific to the company, weather, and many other variables. An increased ROE during one year does not necessarily mean that a utility has entered a sustained, substantial period of overearning.

. . .

(8) During the calender year 1996, as reported in generally available and accepted periodicals, regulatory agencies in other states issued seven decisions authorizing ROEs for electric utilities of 12% and 13%.

. . .

(11) The Commission will continue to monitor CP&L's ROE through our *Quarterly Review.*

The Commission further stated that it did not "foreclose the possibility of an investigation at some point in the future." Thus, having considered the entire record, we conclude that the Commission's decision was reasonable and, therefore, was not arbitrary and capricious. CIGFUR's argument to the contrary fails.

For the foregoing reasons, we affirm the orders of the North Carolina Utilities Commission.

Affirmed.

Judges WALKER and MARTIN, Mark D., concur.