**STATE ex rel. UTILS. COMM'N v. NUI CORP.**

[154 N.C. App. 258 (2002)]

STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION; PUBLIC STAFF—NORTH CAROLINA UTILITIES COMMISSION and CAROLINA UTILITY CUSTOMERS ASSOCIATION, INC. Appellees v. NUI CORPORATION d/b/a NUI NORTH CAROLINA GAS, Appellant

No. COA01-1051

(Filed 3 December 2002)

**1. Utilities— denial of application for natural gas expansion fund—consistency with public interest**

The Utilities Commission did not err by denying petitioner natural gas supplier's application for the establishment of a natural gas expansion fund under N.C.G.S. § 62-158 for service to unserved areas based on it being inconsistent with the public interest, because: (1) the Commission properly exercised its limited discretion in determining that under the facts of this case the creation of an expansion fund was not in the best interests of the public; and (2) petitioner has failed to carry its burden of demonstrating that the Commission's judgment was unreasonable or affected by errors of law.

**2. Utilities— denial of application for natural gas expansion fund—public interest factors**

The Utilities Commission's announcement and application of allegedly previously unarticulated public interest factors to petitioner natural gas supplier's case seeking an application for the establishment of a natural gas expansion fund for service to unserved areas did not amount to an unfair burden and surprise, because: (1) the factors relied upon by the Commission do not represent an unstated and additional evidentiary burden, but instead are a sensible and pertinent articulation of the existing public interest standard; and (2) the Commission's action was neither arbitrary nor capricious.

**3. Utilities— denial of application for natural gas expansion fund—alleged different treatment of natural gas suppliers**

The Utilities Commission did not treat petitioner natural gas supplier in a distinctly different and prejudicial manner compared to other cases before the Commission even though petitioner contends that another natural gas supplier was permitted to establish a natural gas expansion fund under substantively identical circumstances as those conditions in petitioner's case, because the circumstances in the two cases were not identical.

IN THE COURT OF APPEALS                    259

STATE ex rel. UTILS. COMM'N v. NUI CORP.

[154 N.C. App. 258 (2002)]

**4. Utilities— denial of application for natural gas expansion fund—findings—pipeline transverses county**

The Utilities Commission did not err by finding that a major interstate natural gas pipeline serving North Carolina transverses the middle of the pertinent county to support the Commission's conclusion that establishment of an expansion fund was not in the best interests of the public, because it was relevant and a proper factor in the decision to deny the establishment of an expansion fund.

**5. Utilities— denial of application for natural gas expansion fund—comparison to other counties**

The Utilities Commission did not err by comparing the pertinent county to other counties with inferior natural gas infrastructure in its determination of whether to deny or grant petitioner's application for the establishment of a natural gas expansion fund, because: (1) even if the Commission's comparison was irrelevant, there was nevertheless competent and material evidence before the Commission tending to show the pertinent county enjoys significant gas infrastructure; and (2) the evidence supported the Commission's conclusion that significant natural gas infrastructure was available in petitioner's territory to promote economic development.

**6. Utilities— denial of application for natural gas expansion fund—reducing gas costs more consistent with public interest**

The Utilities Commission did not err by concluding that, under the facts of the present case, reducing customer gas costs is more consistent with the public interest than applying supplier refunds toward further natural gas infrastructure in the pertinent county, because: (1) the Court of Appeals may not set aside the Commission's decision merely based on the fact that different conclusions could have been reached from the evidence; and (2) the Commission's decision was properly supported by competent evidence in the record which in turn supported its conclusions.

Appeal by petitioner from order entered 12 April 2001 by the North Carolina Utilities Commission. Heard in the Court of Appeals 16 May 2002.

*Nelson Mullins Riley & Scarborough L.L.P., by James H. Jeffries, IV, for petitioner appellant.*

*Robert P. Gruber, Executive Director, Public Staff, by Chief Counsel Antoinette R. Wike, for intervenor appellee Public Staff.*

*West Law Offices, P.C., by James P. West, for intervenor appellee Carolina Utility Customers Association, Inc.*

TIMMONS-GOODSON, Judge.

NUI North Carolina Gas ("petitioner") appeals from a final order of the North Carolina Utilities Commission ("the Commission") denying petitioner's request for the establishment of a natural gas expansion fund pursuant to section 62-158 of the North Carolina General Statutes. For the reasons set forth herein, we affirm the order of the Commission.

Petitioner is an operating division of NUI Corporation, a corporation based in New Jersey. Petitioner is a North Carolina public utility, authorized to transport, distribute and furnish natural gas service to customers throughout its franchised territory of Rockingham County and portions of Stokes County, North Carolina. On 14 June 2000, petitioner filed a petition with the Commission, seeking approval for the establishment of a natural gas expansion fund and for the deposit into such fund of certain supplier refunds being held by petitioner.

The public staff at the Utilities Commission, in their role as representatives of the consuming public at large, opposed petitioner's request, asserting that the establishment of an expansion fund would not be in the best interests of the public. Carolina Utility Customers Association, Inc. was permitted to intervene and subsequently filed a petition opposing establishment of the expansion fund on similar grounds.

On 21 November 2000, the matter came on for hearing before a panel of the Commission, at which the following evidence was presented: Petitioner supplies natural gas service to major population centers within its franchised areas, including the towns of Reidsville, Eden, Madison and Mayodan. The areas between these major population centers are generally undeveloped and sparsely populated, with the exception of the town of Stoneville, which has an approximate population of 1,100 persons. The town of Stoneville receives no natural gas service. There are moreover two industrial development zones within petitioner's franchised territory that have no access to natural gas service. Petitioner asserted at the hearing that extension of natural gas service into these areas would reduce the cost of

STATE ex rel. UTILS. COMM'N v. NUI CORP.

[154 N.C. App. 258 (2002)]

energy to the public and provide opportunities for economic growth. According to economic studies performed by petitioner, expansion of natural gas service into the town of Stoneville and the industrial development zones would result in substantial economic loss to petitioner and was therefore infeasible, unless the costs of construction were mitigated in some manner. Petitioner therefore requested that a natural gas expansion fund be established in order to construct facilities in the unserved areas, and that petitioner be allowed to deposit nearly two million dollars in supplier refunds into the fund.

Public staff presented evidence tending to show that there was significant natural gas infrastructure within petitioner's territory. Public staff noted that the town of Stoneville was the only incorporated municipality within Rockingham County that did not have natural gas service, and that the price for natural gas was high. According to the public staff, reducing natural gas costs by returning monies to ratepayers within petitioner's territory represented a more constructive use of the supplier refunds held by petitioner. Public staff therefore recommended denial of the petition for an expansion fund.

On 28 February 2001, the Commission issued a recommended order denying petitioner's application for the expansion fund and requiring petitioner to refund to its customers the supplier refunds held by petitioner in escrow. Petitioner filed exceptions to the recommended order, and the Commission heard oral arguments on the matter. On 12 April 2001, the Commission overruled petitioner's exceptions and issued its final order affirming the recommended order. From this order, petitioner appeals.

---

The primary issue on appeal is whether the Commission erred in denying petitioner's application for establishment of an expansion fund. For the reasons stated herein, we affirm the order of the Commission.

Section 62-94 of the North Carolina General Statutes sets forth the applicable standard of review by appellate courts of decisions by the Utilities Commission. Under section 62-94, the reviewing court may

> reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions, or

(2) In excess of statutory authority or jurisdiction of the Commission, or

(3) Made upon unlawful proceedings, or

(4) Affected by other errors of law, or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted, or

(6) Arbitrary or capricious.

N.C. Gen. Stat. § 62-94(b) (2001). Because a determination of the Commission is *prima facie* reasonable, *see Utilities Comm. v. Coach Co. and Utilities Comm. v. Greyhound Corp.*, 260 N.C. 43, 50, 132 S.E.2d 249, 255 (1963), "judicial reversal of an order of the Utilities Commission is a serious matter for the reviewing court which can be properly addressed only by strict application of the six criteria [of this section] which circumscribe judicial review." *Utilities Comm. v. Oil Co.*, 302 N.C. 14, 20, 273 S.E.2d 232, 235 (1981) (footnote omitted). The appellate court must review the whole record to determine whether there is support for the Commission's decision, but "where there are two reasonably conflicting views of the evidence, the appellate court may not substitute its judgment for that of the Commission." *State ex rel. Util. Comm'n v. Carolina Indus. Group*, 130 N.C. App. 636, 639, 503 S.E.2d 697, 699-700, *disc. review denied*, 349 N.C. 377, 525 S.E.2d 465 (1998). Having established the proper standard of review, we turn to petitioner's arguments on appeal.

[1] Petitioner first argues that the Commission erred in concluding that the establishment of an expansion fund in the instant case was inconsistent with the public interest. Petitioner asserts that this conclusion contravenes the stated public policy of North Carolina and was thus contrary to law, arbitrary and capricious, and unsupported by the evidence.

Section 62-2 of the North Carolina General Statutes declares that it is the policy of this State

To facilitate the construction of facilities in and the extension of natural gas service to unserved areas in order to promote the public welfare throughout the State and to that end to authorize the creation of expansion funds for natural gas local distribution

IN THE COURT OF APPEALS                    263

STATE ex rel. UTILS. COMM'N v. NUI CORP.

[154 N.C. App. 258 (2002)]

companies or gas districts to be administered under the supervision of the North Carolina Utilities Commission.

N.C. Gen. Stat. § 62-2(a)(9) (2001). "[T]he establishment of an expansion fund is in the public interest." *State ex rel. Utilities Comm. v. Carolina Utility Cust. Assn.*, 336 N.C. 657, 671, 446 S.E.2d 332, 340 (1994). To implement this public policy, section 62-158 provides that

> In order to facilitate the construction of facilities in and the extension of natural gas service to unserved areas, the Commission may, after a hearing, order a natural gas local distribution company to create a special natural gas expansion fund to be used by that company to construct natural gas facilities in areas within the company's franchised territory that otherwise would not be feasible for the company to construct. The fund shall be supervised and administered by the Commission. Any applicable taxes shall be paid out of the fund.

N.C. Gen. Stat. § 62-158(a) (2001). The statute also authorizes the Commission to adopt rules for the establishment of expansion funds. *See* N.C. Gen. Stat. § 62-158(d) (2001). Rule R6-82 of the Rules and Regulations of the North Carolina Utilities Commission, concerning the establishment of expansion funds, dictates that

> In determining the establishment of a fund and the sources and magnitude of the initial funding, the Commission will consider the [natural gas local distribution company's] showing that expanding to serve unserved areas is economically infeasible and such other factors as the Commission deems reasonable and consistent with the intent of G.S. 62-158 and G.S. 62-2(9). Before ordering the establishment of a fund, the Commission must find that it is in the public interest to do so. Upon the establishment of a fund, the Commission shall provide for appropriate notice of its decision.

N.C. Utilities Commission, *North Carolina Public Utilities Laws and Regulations*, Rule R6-82(d) (Lexis 1999 ed.) (hereinafter "Commission Rule").

In *State ex rel. Utilities Comm. v. Carolina Utility Cust. Assn.*, Carolina Utility Customers Association, Inc. ("CUCA"), who is an intervenor in the instant case, sought reversal of a decision by the Commission authorizing establishment of an expansion fund. The decision by the Commission stated that, where a natural gas utility

STATE ex rel. UTILS. COMM'N v. NUI CORP.

[154 N.C. App. 258 (2002)]

establishes that unserved areas exist within its territory that are otherwise infeasible to serve, the Commission has "limited discretion" to determine whether or not an expansion fund should be created for that particular gas utility. *See id.* at 664, 446 S.E.2d at 337. CUCA argued that, in approving the establishment of the expansion fund, the Commission "misapprehended the scope of its discretion under N.C.G.S. § 62-158." *Id.* According to CUCA, which had advocated the return of supplier refunds to customers as opposed to deposit of such funds into the expansion fund, the Commission had wide, rather than limited, discretion to approve or deny petitions.

Noting that the General Assembly had recognized the establishment of expansion funds to be in the public interest, our Supreme Court held that the Commission "did not act under a misapprehension of applicable law and that it granted the petition and established the expansion fund pursuant to a proper interpretation of its authority and discretion to do so." *Id.* at 666, 446 S.E.2d at 338. Examining Commission Rule R6-82(d), the Court stated that

> The plain language of this rule indicates that the Commission had a proper view of its discretion in making a determination of whether to authorize the creation of an expansion fund: It was to evaluate pertinent factors in a manner consistent with the legislative intent; if, after doing so, the Commission concluded that the creation of an expansion fund would not be in the public interest, it would presumably decline to order the creation of such a fund. Because the General Assembly has clearly stated that it is the policy of the state "[t]o facilitate the construction of facilities in and the extension of natural gas service to unserved areas in order to promote the public welfare," N.C.G.S. § 62-2(9), the Commission is not free to exercise its discretion with regard to whether, in a general sense, this policy is wise or unwise.

*Id.* (alteration in original). The Commission could, however, exercise limited discretion in determining whether or not the establishment of a particular expansion fund was in the public interest.

In the instant case, the Commission expressly recognized in its order that, pursuant to *State ex rel. Utilities Comm. v. Carolina Utility Cust. Assn.*, it had limited discretion to "evaluate pertinent factors in a manner consistent with the legislative intent" in determining whether the establishment of an expansion fund would be in the public interest. The Commission articulated these pertinent factors as including

the size of the geographic area without service, the size of the area relative to the amount of natural gas infrastructure already existing within the county involved, the location of population centers within the county and their proximity to natural gas infrastructure, the presence or lack of economic development in the county, practical engineering and right-of-way aspects of installing natural gas facilities in some cases, and whether traditional economic tests and policies and other sources of funding should take precedence over use of expansion funds.

Applying these factors to the evidence before it, the Commission concluded that establishment of an expansion fund was not in the public interest. Specifically, the Commission found that the areas to be served by the potential expansion were relatively small and were located within a county that had "significant natural gas infrastructure available to promote economic development." Further, economic development within petitioner's territory was rated three on a scale of five by the North Carolina Department of Commerce. The Commission also noted that alternate avenues existed to mitigate the costs of extending service to unserved areas. The Commission moreover found that, because natural gas prices were high, "[a] refund of the $2 million held in escrow by [petitioner] will help to mitigate high customer bills during the current winter, and the return of supplier refunds in the future will help to make natural gas more attractive as a fuel of choice."

Petitioner argues that, under the plain language of the statutes, Commission Rules, and case law, the establishment of a natural gas expansion fund for service to unserved areas is necessarily of greater public interest than a refund to existing customers, and that the Commission erred in concluding otherwise. We disagree.

By asserting that the Commission erred in concluding that the establishment of this particular expansion fund was not in the best interests of the public despite case law and statutory authority declaring the establishment of such funds to be in the general public interest, petitioner essentially argues that the Commission was without discretion to deny its petition once it had established that there existed within its territory unserved areas that were otherwise infeasible to serve.[1] While it is clear that the Commission has no authority

1. Whether or not the two industrial development zones within petitioner's franchised territory qualify as "unserved areas" within the meaning of section 62-158 of the General Statutes is debatable. *See* Commission Rule R6-81(b)(5) (defining "unserved areas" as "[c]ounties, cities or towns of which a high percentage is unserved"). As the

"with regard to whether, in a *general sense*, [the] policy [advocating expansion funds] is wise or unwise," *State ex rel. Utilities Comm.*, 336 N.C. at 666, 446 S.E.2d at 338 (emphasis added), it also clearly has the authority to exercise limited discretion in determining whether the establishment of a particular expansion fund is in the best interests of the public. *See* N.C. Gen. Stat. § 62-158(a) (stating that "the Commission *may*, after a hearing, order a natural gas local distribution company to create a special natural gas expansion fund") (emphasis added); *State ex rel. Utilities Comm.*, 336 N.C. at 666, 446 S.E.2d at 338 (stating that the proper role of the Commission in evaluating petitions for an expansion fund is to "evaluate pertinent factors in a manner consistent with the legislative intent" and to decline the creation of such funds if it concludes "that the creation of an expansion fund would not be in the public interest"); Commission Rule R6-82(d) (directing the Commission to evaluate a petition using such "factors as the Commission deems reasonable and consistent with the intent of G.S. 62-158 and G.S. 62-2(9)," in order to determine whether the establishment of a fund "is in the public interest").

A determination by the Commission is *prima facie* just and reasonable. *See Utilities Commission v. Ray*, 236 N.C. 692, 697, 73 S.E.2d 870, 874 (1953). The burden is on the appellant to demonstrate an error of law in the proceedings. *See Utilities Commission v. Champion Papers, Inc.*, 259 N.C. 449, 456, 130 S.E.2d 890, 895 (1963). "To be arbitrary and capricious, the Commission's order would have to show a lack of fair and careful consideration of the evidence or fail to display a reasoned judgment." *State ex rel. Utilities Comm. v. Piedmont Nat. Gas Co.*, 346 N.C. 558, 573, 488 S.E.2d 591, 601 (1997). Here, the Commission carefully articulated pertinent factors and appropriately applied them to the evidence before it. We conclude that the Commission properly exercised its limited discretion in determining that, under the facts of this case, the creation of an expansion fund was not in the best interests of the public. As petitioner has failed to carry its burden of demonstrating that the Commission's judgment was unreasonable or affected by errors of law, we overrule petitioner's first argument.

[2] By its second argument, petitioner contends that the Commission's announcement and application of previously unarticulated "public interest factors" to petitioner's case amounted to an unfair burden and surprise. As recited *supra*, the Commission articu-

---

town of Stoneville clearly qualified as an unserved area, however, we do not address this issue.

STATE EX REL. UTILS. COMM'N v. NUI CORP.

[154 N.C. App. 258 (2002)]

lated numerous factors in determining whether to deny or approve the establishment of the expansion fund, including (1) the size of the geographic area without service; (2) the size of the area relative to the amount of natural gas infrastructure already existing within the county involved; (3) the location of population centers within the county and their proximity to natural gas infrastructure; (4) the presence or lack of economic development in the county; (5) practical engineering and right-of-way aspects of installing natural gas facilities; and (6) whether traditional economic tests and policies and other sources of funding should take precedence over use of expansion funds.

Petitioner does not deny that these factors are pertinent to the Commission's decision, but contends that their application created a new and heightened standard for the establishment of an expansion fund for which petitioner was unprepared. Petitioner asserts that the Commission thereby acted in an arbitrary and capricious manner. We do not agree.

Before the Commission may order the establishment of an expansion fund, it must find that it is in the public interest to do so, applying "pertinent factors in a manner consistent with the legislative intent." *State ex rel. Utilities Comm.*, 336 N.C. at 666, 446 S.E.2d at 338. The factors relied upon by the Commission in the instant case do not represent "an unstated and additional evidentiary burden" as asserted by petitioner, but instead are a sensible and pertinent articulation of the existing public interest standard, consistent with the legislative intent of establishing expansion funds when it is in the best interests of the public. We conclude that the Commission's action was neither arbitrary nor capricious, and we overrule this assignment of error.

[3] Petitioner further contends that it was treated "in a distinctly different and prejudicial manner" compared to other cases before the Commission. Specifically, petitioner argues that another natural gas supplier, Piedmont Natural Gas Company, Inc. ("Piedmont"), was permitted to establish a natural gas expansion fund under "substantively identical circumstances" as those conditions in petitioner's case. In the Piedmont decision, the Commission allowed Piedmont to establish an expansion fund on a contingent basis, despite the fact that some level of service already existed in Piedmont's franchised territory. Petitioner offers this comparison as the basis for its contention that the Commission's decision was arbitrary and capricious. Again, we must disagree with petitioner.

Despite petitioner's assertions to the contrary, our review of the Piedmont decision reveals that the circumstances were not identical to the facts of the present case. Most notably, the Commission found that "new franchise territory may be certified to Piedmont . . . in the near future." Further, Piedmont was allowed to establish an expansion fund on a contingent basis only, in order to allow further review of individual projects. In its decision concerning present petitioner, the Commission specifically noted that the Commission had "in fact only used Piedmont's expansion fund to help build facilities in counties that were franchised to Piedmont after April 1996 and had no natural gas service at all." There was no evidence presented in the instant case that petitioner would be acquiring new territory at any point in the future. Because the two cases were not identical, petitioner has failed to show that the Commission's treatment of its case was arbitrary or capricious. We therefore overrule this assignment of error.

[4] Petitioner next argues that several of the Commission's findings and conclusions were either irrelevant or unsupported by substantial evidence. First, petitioner objects to the Commission's finding that "Transco, the major interstate natural gas pipeline serving North Carolina, transverses the middle of Rockingham County." Petitioner contends that this finding was irrelevant to the Commission's conclusion that establishment of an expansion fund was not in the best interests of the public. We disagree. At the hearing before the Commission, James G. Hoard, a member of the public staff, testified that Rockingham County enjoyed substantial gas infrastructure, of which the Transco pipeline is a part. The fact that substantial gas infrastructure exists within Rockingham County was a relevant and proper factor in the decision to deny the establishment of an expansion fund.

[5] Petitioner also asserts that the Commission's comparison of Rockingham County to other counties with inferior natural gas infrastructure was irrelevant to a determination of whether to deny or grant the petition by petitioner. In its order, the Commission concluded that, "Compared to other [natural gas local distribution companies] and other counties, there is significant natural gas infrastructure available [in Rockingham County] to promote economic development." Petitioner asserts that, as the establishment of an expansion fund by petitioner would have no impact on expansion of natural gas facilities outside petitioner's franchised territory, the Commission's comparison was irrelevant. Even if the

**STATE** EX REL. **UTILS. COMM'N** v. **NUI CORP.**

[154 N.C. App. 258 (2002)]

Commission's comparison of Rockingham County's infrastructure to that of other counties was irrelevant, there was nevertheless competent and material evidence before the Commission tending to show that Rockingham County enjoys significant gas infrastructure. For example, the evidence showed that Stoneville is the only incorporated municipality within petitioner's territory that does not have natural gas service. Further, Mr. Hoard testified that there was "plenty of gas infrastructure" in Rockingham County. We have already concluded above that the existence of a natural gas infrastructure within Rockingham County was a relevant and proper factor in the decision to deny the establishment of an expansion fund. Because the evidence supported the Commission's conclusion that significant natural gas infrastructure was available in petitioner's territory to promote economic development, the Commission did not err in its conclusion.

**[6]** By its final assignment of error, petitioner maintains that the Commission erred in concluding, under the facts of the present case, that "reducing customers' gas costs is more consistent with the public interest than applying supplier refunds toward further natural gas infrastructure in Rockingham County." Petitioner argues that the opportunity to fund natural gas expansion outweighs a one-time benefit to customers, and that the Commission erred in concluding otherwise. It is well established, however, that this Court may not properly set aside the Commission's decision merely because different conclusions could have been reached from the evidence. *See Utilities Comm. v. Telephone Co.*, 281 N.C. 318, 354, 189 S.E.2d 705, 728 (1972). The Commission's decision was properly supported by competent evidence of record, which in turn supported its conclusions. We therefore overrule petitioner's final assignment of error.

The decision of the Utilities Commission is hereby

Affirmed.

Judges CAMPBELL and LEWIS concur.