BLAYLOCK GRADING COMPANY, LLP, PLAINTIFF v. NEAL EVERETT SMITH AND NEAL SMITH ENGINEERING, INC., DEFENDANTS

No. COA07-615

(Filed 1 April 2008)

**1. Contracts— breach—risk allocation provision—limited liability clauses—land surveying not within public service exception**

The trial court erred in a breach of contract and negligence case arising out of improper land surveying services by holding that the risk allocation provision (limited liability clause) in the contract was void as against public policy and by denying defendants' motion for judgment notwithstanding the verdict to limit damages to $50,000 because: (1) plaintiff stipulated that there were no formation irregularities in the contract, thus acknowledging that the contract was not unconscionable and that there was no inequality in bargaining position between the two parties; (2) plaintiff and defendants are sophisticated professional parties who conducted business at arms' length, and the result of the contract did not elicit a profound sense of injustice; and (3) defendants are not common carriers or providers of a public utility. Further, land surveying services do not fall within the public service exception. A breach of contract between two parties in-

volves only economic loss and does not implicate the health and safety of the public.

## 2. Contracts— breach—clause limiting party's liability. instead of indemnity clause

N.C.G.S. § 22B-1 was not applicable in a breach of contract and negligence case when the pertinent contract involved a clause that limited a party's liability instead of being an indemnity clause whereby one party agrees to be liable for the negligence of the other party. The statute only limits a promisee from recouping damages paid to a third party as a result of personal injury or property damages when the damages were caused by the promisee, and it does not apply to contracts between a promisor and promisee limiting the amount of damages recoverable by one from the other like in the present case.

Appeal by defendants from orders entered 12 September 2006, 27 November 2006, and 11 December 2006, and judgment entered 27 November 2006 by Judge James F. Ammons, Jr. in Harnett County Superior Court. Heard in the Court of Appeals 14 January 2008.

*Bain, Buzzard & McRae, LLP, by L. Stacy Weaver, III, Edgar R. Bain, and Robert A. Buzzard, for plaintiff-appellee.*

*Hamilton, Moon, Stephens, Steele & Martin, PLLC, by David B. Hamilton, David G. Redding, Adrianne Huffman, and Erik R. Rosenwood, for defendants-appellants.*

MARTIN, Chief Judge.

On 20 September 2004 Blaylock Grading Company, LLP ("plaintiff") and Neal Smith and Neal Smith Engineering, Inc. ("defendants") entered into a contract pursuant to which defendants would provide land surveying services for plaintiff. The contract contained a "Risk Allocation" provision which stated:

[Defendants' liability to plaintiff] for any and all injuries, claims, losses, expenses, damages or claim expenses arising out of this agreement, from any cause or causes, shall not exceed the total amount of $50,000, the amount of [defendants'] fee (whichever is greater) or other amount agreed upon when added under Special Conditions. Such causes include, but are not limited to, [defendants'] negligence, errors, omissions, strict liability, breach of contract or breach of warranty.

Pursuant to this contract, defendants performed land surveying for plaintiff on a military housing site for which plaintiff was providing grading services. Defendants mistakenly set the benchmarks for the complex 1.66 to 1.7 feet higher than specified in the design plan, requiring plaintiff to import fill to raise the elevation of the site.

On 13 January 2006 plaintiff filed a complaint against defendants alleging breach of contract and negligence. Defendants moved for partial summary judgment, claiming that the Risk Allocation provision limited damages to $50,000. The trial court denied the motion. Plaintiff made an oral motion to bifurcate the trial into two phases: one dealing with the issues of negligence, breach of contract, and damages, and the other dealing with the validity of the Risk Allocation provision. The trial court granted the motion and ruled that the Risk Allocation provision could not be introduced into evidence in the first phase of the trial and that the Risk Allocation provision would be redacted from the contract before it was shown to the jury.

At the close of the first phase of the trial, the jury found that defendants breached the contract with plaintiff and were negligent in their performance of the surveying duties, and the jury returned a verdict for plaintiff in the amount of $574,714. Defendants moved for judgment notwithstanding the verdict. The trial court denied this motion. Plaintiff stipulated that there were no formation irregularities in the contract and asked the trial court to determine the validity of the Risk Allocation provision as a matter of law. On 27 November 2006 the trial court held that the Risk Allocation provision was void as against public policy and entered judgment on the jury verdict, eliminating the need for the second phase of the trial. Defendants appeal.

[1] Defendants argue that the trial court erred in finding the Risk Allocation provision to be void and unenforceable. Therefore, defendants argue, the trial court should have granted their motion for judgment notwithstanding the verdict and should have limited damages to $50,000. We agree. Reviewing these assignments of error requires us to examine two issues: 1) whether North Carolina law allows a professional engineer/land surveyor to limit its liability when contracting with another party; and 2) whether the Risk Allocation provision violated N.C.G.S. § 22B-1 (2007).

Our Supreme Court has addressed the validity of limited liability clauses. In *Gas House, Inc. v. Southern Bell Telephone & Telegraph*

*Company*, 289 N.C. 175, 176-77, 221 S.E.2d 499, 500-01 (1976), *overruled on other grounds by State ex rel. Utils. Comm'n. v. Southern Bell Tel. & Tel. Co.*, 307 N.C. 541, 299 S.E.2d 763 (1983), the plaintiff gas company filed a breach of contract and negligence action against the defendant telephone company for mistakenly classifying its advertisement in the telephone company's Yellow Pages under the classification "Gas—Industrial & Medical—Cylinder & Bulk" instead of under "Gas—Liquefied Petroleum—Bottled & Bulk." *Id.* The plaintiff did not sell any industrial and medical gases, and as a result of the mistake it suffered approximately $100,000 in lost profits. *Id.* at 176, 221 S.E.2d at 500. The defendant claimed that its liability was limited by a clause in the contract signed by plaintiff, which stated:

> The Telephone Company's liability on account of errors in or omissions of such advertising shall in no event exceed the amount of charges for the advertising which was omitted or in which the error occurred in the then current directory issue and such liability shall be discharged by an abatement of the charges for the particular listing or advertising in which the omission occurred.

*Id.* at 177, 221 S.E.2d at 501.

This Court held that the limited liability clause was void as against public policy. *Id.* at 178, 221 S.E.2d at 501-02. The Supreme Court reversed, holding that the limitation on liability was not contrary to public policy and stating:

> People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain. Also, they should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side. It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such unconscionability.

*Id.* at 182, 221 S.E.2d at 504 (quoting 14 Samuel Williston, *A Treatise on the Law of Contracts* § 1632 (Walter H.E. Jaeger ed., 3d ed. 1961). The Court also distinguished the facts in *Gas House* from a situation where a common carrier or public utility attempts to limit its liability, holding that:

[A] limitation upon the right of the common carrier, or other public utility, to contract applies, however, only to its undertakings to render services which fall within its public service business. For example, a telephone company leasing office space to a tenant, or an electric power company selling an electric stove, is as free to contract with reference to those matters as is any other owner of a building or dealer in electric stoves. The business of carrying advertisements in the yellow pages of its directory is not part of a telephone company's public utility business.

*Id.* at 184, 221 S.E.2d at 505.

In the present case, plaintiff stipulated that there were no formation irregularities in the contract; thus, it acknowledged that the contract was not unconscionable and that there was no inequality in bargaining position between the two parties. Plaintiff and defendants are sophisticated, professional parties who conducted business at arms' length, and the "result" of the contract does not elicit a "profound sense of injustice." *Id.* at 182, 221 S.E.2d at 504. In addition, defendants are not common carriers or providers of a public utility. The parties here are similar to "a telephone company leasing space to a tenant or an electric power company selling an electric stove[.]" *Id.* at 184, 221 S.E.2d at 505; *see also Reed's Jewelers, Inc. v. ADT Co.*, 43 N.C. App. 744, 747, 260 S.E.2d 107, 109-10 (1979) (holding that a limitation on liability for stolen property in a contract between a jeweler and a burglar alarm company was valid and did not invoke the public service exception where "[t]he contractual provision in question was set out in the contract in bold print" and "[n]either party contend[ed that] the contract in question was not signed by it nor does the plaintiff deny its contents"). Therefore, the Risk Allocation provision was not void as against public policy.

The trial court held, and plaintiff argues, that land surveying services fall within the public service exception because they are "extensively regulated" industries. We disagree. While it is true that surveying is regulated by statute in North Carolina and that engineers and land surveyors in our State must be licensed, *see* N.C.G.S. § 89C-23 (2007), these facts alone do not automatically convert a profession into a public service. Further, when a breach of contract between two parties involves only economic loss, as in the present case, the health and safety of the public are not implicated. A third party who might be affected by negligence of an engineer or surveyor can still bring a negligence suit against the engineer or surveyor. *See Davidson &*

*Jones, Inc. v. County of New Hanover*, 41 N.C. App. 661, 666-67, 255 S.E.2d 580, 584 (1979) (holding that "the law imposes on every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm and calls a violation of that duty negligence[,]" that "a complete binding contract between the parties is not a prerequisite to a duty to use due care in one's actions . . . [,]" and that architects may be held liable for a breach of the duty of care and breach of contract that "results in foreseeable injury, economic or otherwise"). Thus, the limitation on liability in the contract at issue does not implicate the public health or safety.

[2] Turning to the second issue, N.C.G.S § 22B-1 (2007), titled "Construction indemnity agreements invalid[,]" states:

> Any promise or agreement in, or in connection with, a contract or agreement relative to the design, planning, construction, alteration, repair or maintenance of a building, structure, highway, road, appurtenance or appliance, including moving, demolition and excavating connected therewith, *purporting to indemnify or hold harmless the promisee, the promisee's independent contractors, agents, employees, or indemnitees* against liability for damages arising out of bodily injury to persons or damage to property proximately caused by or resulting from the negligence, in whole or in part, of the promisee, its independent contractors, agents, employees, or indemnitees, is against public policy and is void and unenforceable.

N.C. Gen. Stat. § 22B-1 (2007) (emphasis added).

This statute is not applicable in the present case. The contract at issue involves a clause that limits a party's liability, not an indemnity clause whereby one party agrees to be liable for the negligence of the other party. *See Int'l Paper Co. v. Corporex Constructors, Inc.*, 96 N.C. App. 312, 315, 385 S.E.2d 553, 555 (1989) (holding that "[t]he indemnity provisions to which G.S. § 22B-1 apply are those construction indemnity provisions which attempt to hold one party responsible for the negligence of another"). Further, the language of the statute only limits a promisee from recouping damages paid to a third party as a result of personal injury or property damages when the damages were caused by the promisee. *See id.;* N.C. Gen. Stat. § 22B-1 (2007). The statute does not apply to contracts between a promisor and promisee limiting the amount of damages recoverable by one from the other, as does the contract in the

present case. Thus, the Risk Allocation provision did not violate N.C.G.S § 22B-1 (2007).

For the reasons stated above, the trial court erred in holding that the Risk Allocation provision was void and in denying defendants' motion for judgment notwithstanding the verdict. We thus reverse and remand to the trial court for entry of judgment consistent with the limitation on liability in the Risk Allocation provision. In light of this disposition we need not consider defendants' remaining assignments of error.

Reversed.

Judges STEELMAN and STEPHENS concur.