IN RE SUTTLES SURVEYING, PA

[227 N.C. App. 70 (2013)]

---

IN THE MATTER OF Suttles Surveying, P.A., License No. C-0648
(North Carolina Board of Examiners for Engineers and Surveyors
Case No. V2009-027)

---

IN THE MATTER OF Kenneth D. Suttles, PLS License No. L-2678
(North Carolina Board of Examiners for Engineers and Surveyors
Case No. V2009-064)

No. COA 12-1350

Filed 7 May 2013

**1. Engineers and Surveyors—suspension of surveyor's license —dispute with client—authority of Board**

Plaintiff Suttles contended that the Board of Examiners for Engineers and Surveyors (Board) exceeded its statutory authority when it suspended his surveyor's license and reprimanded his surveying company. Specifically, Suttles asserted that the Board lacked

statutory authority to adjudicate a purely contractual dispute, but the Board's decision did not render judgment on whether Suttles breached any contract with Smith. The Board's decision focused on Suttles' actions throughout his business dealings with this client.

2. **Engineers and Surveyors—suspension of surveyor's license —dispute with client — rules not unconstitutionally vague**

The Court of Appeals rejected the contention of a surveyor (Suttles) that the decision of the Board of Examiners for Engineers and Surveyors (Board) to suspend his surveyor's license and reprimand his surveying company was based on unconstitutionally vague and overbroad rules. Any reasonably intelligent member of the profession must have understood that issuing a preliminary plat with knowledge that it would be improperly recorded violated the Board's rules. Also, the record reflected Suttles' personal knowledge that a confidentiality clause in a settlement agreement would necessarily subvert the Board's investigation.

Appeal from Order on Judicial Review entered 21 August 2012 by Judge Nathaniel J. Poovey in Burke County Superior Court affirming a Decision and Right of Appeal entered 10 May 2011 by the North Carolina Board of Examiners for Engineers and Surveyors. Heard in the Court of Appeals 27 March 2013.

*Allen, Moore & Rogers L.L.P., by John C. Rogers, III, for petitioner-appellants.*

*Troutman Sanders, L.L.P., by Patricia P. Shields, for respondent-appellee.*

HUNTER, JR., Robert, N., Judge.

Kenneth Suttles ("Appellant") and his surveying company, Suttles Surveying, P.A., appeal from an Order on Judicial Review affirming the decision of the North Carolina Board of Examiners for Engineers and Surveyors ("the Board") suspending Appellant's license for six months and reprimanding Suttles Surveying. Appellant contends that the trial court erred in affirming the decision of the Board because (1) the Board's decision exceeded the scope of its statutory authority and (2) the Board's decision violated constitutional provisions. For the following reasons, we uphold the trial court's affirmance of the Board's decision.

**IN RE SUTTLES SURVEYING, PA**

[227 N.C. App. 70 (2013)]

## I. Factual and Procedural Background

In the fall of 2008, John R. Smith ("Smith") was involved in a property dispute with his neighbor Ruby Revis ("Revis"). Revis hired A&T Surveying, who determined that a mobile home Smith believed to be situated on his property was in fact on Revis' property. In an effort to challenge Revis' survey, Smith's daughter, Angela Piercy ("Piercy") contacted Suttles Surveying. Piercy met Appellant, the proprietor of Suttles Surveying, and paid him $50.00 to view the disputed property and meet with Smith. Appellant met with Smith to discuss the surveying work that would be needed. Appellant agreed to establish the disputed boundary between the properties, and Smith paid Appellant a down payment of $1,000.00 to begin the surveying work.

Appellant then began the process of surveying the lot. However, a payment dispute subsequently arose between Appellant and Smith. Smith claimed that Appellant had agreed to perform the work for a total dollar amount between $3,000.00 and $4,000.00, not to exceed $4,000.00. Appellant claimed that he told Smith that the $3,000.00-$4,000.00 quote was merely a starting figure. Appellant also claimed that he informed Smith that he would be billed "periodically throughout the process," i.e. on a time and materials basis.

On 20 November 2008 Smith received a $6,206.15 bill from Appellant, noting the $1,000.00 already paid, leaving a balance of $5,206.15. Smith called Appellant and informed him that the bill was not in the amount that they had agreed upon. Appellant responded by reducing the disputed bill to $4,125.60. However, the record reflects that Appellant did not inform Smith that there was additional work to be done or inform Smith of the anticipated cost of this additional work. At a 17 December 2008 meeting Appellant requested that Smith pay the outstanding November bill, but did not inform Smith that more than $8,000.00 in additional fees had accrued.

On 31 December 2008, Appellant wrote Smith a letter requesting payment of the November invoice. This letter informed Smith that the surveying work would not be continued unless the invoice was paid, and noted that the invoice constituted only a "partial billing." Smith responded on 2 January 2009 with a letter asking that the job be completed for the agreed upon amount, between $3,000.00 and $4,000.00. Smith had also obtained two written estimates to do the survey from other surveyors: one was for $3,100.00 and the other was for $2,500.00. On 5 January 2009 Appellant responded to Smith with another letter

**IN RE SUTTLES SURVEYING, PA**

[227 N.C. App. 70 (2013)]

claiming that the surveying work was 99% complete and that the rest would be completed when the November "partial billing" was paid.

On 16 January 2009, in response to a request by Smith, Appellant prepared a letter claiming that the total amount due as of that date was $15,109.87. Appellant offered to settle the account for the work already performed for a payment of $11,961.68. On 26 January 2009 Smith sent Appellant a letter stating that he was willing to pay $3,000.00 (what Smith believed to be the original agreement) if the work was completed. On 5 February 2009, Appellant's attorney sent a letter to Smith including a bill for $10,984.27 for work done between the date of the November invoice and the 17 December 2008 meeting. This letter also reiterated Appellant's offer to settle the account for payment of $11,961.68.

Smith filed a formal complaint with the Board, which was received on 19 February 2009. The Board initially replied that the matter "appears to be a contractual issue, which is outside the jurisdiction of the Board," but that the matter would be presented to the Review Committee for its consideration. In the interim, Appellant sent a letter to Smith threating to place a lien on Smith's property if the account was not settled. Piercy contacted Appellant and negotiated a settlement for $8,000.000 in addition to Smith's previous $1,000.00 deposit.

The terms of the settlement agreement reached between Smith and Appellant contained a confidentiality provision. This confidentiality clause required the parties to keep the terms of the dispute confidential, required that Smith and Piercy waive any right to file a complaint with the Board, and required that Smith and Piercy agree to dismiss within five days any complaints that had already been filed. The settlement agreement also provided that Appellant provide Smith with a map of the survey.

Appellant provided Piercy a map as well as a mylar copy for recording purposes. The map was marked "Preliminary Plat Only Not for Conveyance." The map was incomplete because Appellant failed to place the northwest corner. Nevertheless, Appellant informed Piercy the map would "stand up in court." Piercy recorded the map soon thereafter.

On 30 July 2009, the Board sent Smith a letter informing him that the Review Committee decided to investigate his complaint. In keeping with the terms of the settlement agreement, Piercy contacted the Board to attempt to withdraw the complaint. Additionally, Smith and Piercy initially refused to meet with Board investigator Cathy Kirk ("Kirk") in light of the settlement agreement's confidentiality clause. Smith and Piercy

**IN RE SUTTLES SURVEYING, PA**

[227 N.C. App. 70 (2013)]

eventually agreed to speak to Kirk after Appellant's counsel sent a letter waiving the confidentiality portion of the settlement.

After a hearing, the Board found that by issuing a map marked "preliminary," Appellant had failed "to conduct his practice in order to protect the public health, safety and welfare." The Board found this harmful to the public because Smith and third parties cannot rely on the data recorded on the map. The Board also found that the terms of the confidentially clause in the settlement agreement constituted a failure by Appellant to "conduct his practice in order to protect the public health, safety and welfare," was a failure by Appellant "to recognize the primary obligation to protect the public in the performance of his professional duties," and constituted the "performance of services in an unethical manner." The Board also concluded that Appellant's actions in failing to communicate the cost and services to be provided and already provided was a "failure to be objective and truthful in all professional reports and statements, a failure to include relevant and pertinent information in all professional statements and reports, and was the performance of services in an unethical manner, in violation of 21 NCAC 56.0701(d)(1) and 56.0701(g)."

On 10 May 2011 the Board suspended Appellant's surveyor's license for a period of six months and reprimanded Suttles Surveying. Appellant petitioned for judicial review, and on 21 August 2012 the trial court affirmed the decision of the Board. Appellant filed timely notice of appeal from the trial court's order.

## II. Jurisdiction and Standard of Review

We have jurisdiction over this appeal. *See* N.C. Gen. Stat. § 7A-27(b) (2011) (stating that appeal of a final judgment entered upon a superior court's review of a decision of an administrative agency lies with this Court).

The standard of review on an appeal from the decision of an administrative agency is determined by the nature of the error asserted by the appellant. *ACT-UP Triangle v. Comm'n for Health Servs.*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997). If an appellant argues the agency's decision was affected by an error of law, the standard of review is *de novo*. *In re Appeal by McCrary*, 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993). This Court uses the "whole record" test to determine whether the agency's decision was supported by substantial evidence. *Id.*

Here, Appellant argues only that the Board's decision was affected by errors of law. As such, we review the decision of the Board *de novo*.

*Id.* Because Appellant does not allege that the Board's findings were unsupported by competent evidence in the record, the Board's findings of fact are binding on Appeal. *See N.C. State Bar v. McLaurin,* 169 N.C. App. 144, 149, 609 S.E.2d 491, 495 (2005) (citing *Koufman v. Koufman,* 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991)).

## III. Analysis

### A. Board's Jurisdiction

**[1]** Appellant first contends that the Board exceeded its statutory authority when it suspended Appellant's license for six months and reprimanded Suttles Surveying. Specifically, Appellant asserts that the Board lacks statutory authority to adjudicate a purely contractual dispute. We disagree with Appellant's characterization of the Board's decision.

"The powers and authority of administrative officers and agencies are derived from, defined and limited by constitution, statute, or other legislative enactment." *State ex rel. Comm'nr of Ins. v. N.C. Rate Bureau,* 300 N.C. 381, 399, 269 S.E.2d 547, 561 (1980). Chapter 89C of the General Statutes delineates the Legislature's regulation of the practice of Engineering and Land Surveying. N.C. Gen. Stat. § 89C-2 (2011) provides that, "[i]n order to safeguard life, health, and property, and to promote the public welfare, the practice of engineering and the practice of land surveying in this State are hereby declared to be subject to regulation in the public interest."

The Legislature has granted the Board the power to adopt and enforce rules of professional conduct. N.C. Gen. Stat. § 89C-10 (2011). All individuals licensed by the Board must observe the rules of professional conduct which should be adopted "[i]n the interest of protecting the safety, health, and welfare of the public." N.C. Gen. Stat. § 89C-20 (2011). In cases where violations of the rules of professional conduct are alleged, the Board proceeds under N.C. Gen. Stat. § 89C-22 (2011). *See* N.C. Gen. Stat. § 89C-20.

N.C. Gen. Stat. § 89C-22 establishes the Board's procedure for disciplinary action. Charges of "fraud, deceit, gross negligence, incompetence, misconduct, or violations of this Chapter, the rules of professional conduct, or any rules adopted by the Board" may be levied against Board licensees, and must be sworn to in writing and filed with the Board. N.C. Gen. Stat. § 89C-22(a). "All charges, unless dismissed by the Board as unfounded or trivial or unless settled informally, shall be heard by the Board as provided under the requirements of Chapter 150B of the General Statutes." N.C. Gen. Stat. § 89C-22(b). In the event of charges, the

licensee is granted a hearing. "If, after a hearing, a majority of the Board votes in favor of sustaining the charges, the Board shall reprimand, levy a civil penalty, suspend, refuse to renew, refuse to reinstate, or revoke the licensee's certificate, require additional education or, as appropriate, require reexamination." N.C. Gen. Stat. § 89C-22(c). The Board may levy said penalties if a licensee is found guilty of a "[v]iolation of any provisions of this Chapter, the Rules of Professional Conduct, or any rules as adopted by the Board." N.C. Gen. Stat. § 89C-21(a)(4).

The Board's rules of professional conduct require, *inter alia*, that a licensee be "objective and truthful in all professional reports, statements, or testimony. The licensee shall include all relevant and pertinent information in such reports, statements or testimony." 21 NCAC 56.0701(d)(1). Moreover, a licensee is required to "perform services in an ethical . . . and . . . lawful manner." 21 NCAC 56.0701(g).

Appellant contends that the Board's decision impermissibly adjudicated a contractual fee dispute between Appellant and Smith. Appellant's argument mischaracterizes the nature of the Board's decision. It is indeed true that the Board does not have the statutory authority to resolve disputes between private parties regarding payments made for surveying work; such decisions are the province of the courts. However, here the Board's decision does not render judgment on whether the Appellant breached any contract with Smith. The Board's decision focuses on Appellant's actions throughout his business dealings with Smith. The Board held that Appellant did not perform his services in an ethical manner and was not truthful in all of his interactions with Smith, thus falling short of the professional standards promulgated by the Board. *See* 21 NCAC 56.0701(d)(1); 21 NCAC 56.0701(g). Such questions of truthfulness and ethical behavior are the very issues for which the Legislature granted the Board power to promulgate professional rules protecting the "safety, health, and welfare of the public." N.C. Gen. Stat. § 89C-20; *see also* N.C. Gen. Stat. § 89C-10; N.C. Gen. Stat. § 89C-2.

Appellant claims that the conduct at issue "in no way implicates the public health, safety, or welfare" and thus disciplining Appellant constitutes *ultra vires* action by the Board. This argument also fails because, as N.C. Gen. Stat. § 89C-2 makes clear, the Legislature intended its rules on the practice of surveying to protect property interests in North Carolina. The Board found that Appellant's actions in issuing a "Preliminary Plat," knowing that Piercy intended to record the map, did not appropriately protect the public because neither Smith nor third parties could rely on the data recorded on the map.

Appellant cites *Blaylock Grading Co. v. Smith*, 189 N.C. App. 508, 658 S.E.2d 680 (2008) for the proposition that the Board lacks statutory authority over purely economic matters between private parties. The Court in *Blaylock* noted that "when a breach of contract between two parties involves only economic loss . . . the health and safety of the public are not implicated." *Id.* at 512, 658 S.E.2d at 683. However, *Blaylock* merely involved a contractual dispute between private parties, one of whom happened to be a land surveyor. None of the factual circumstances found by the Board discussed above were an issue in *Blaylock*. As such, *Blaylock* is inapposite to the case at bar.

The Legislature has expressly endowed the Board with the authority to promulgate Rules of Professional Conduct and to discipline licensees that violate those rules. See N.C. Gen. Stat. §§ 89C-10, 89C-20, 89C-21, 89C-22. Here, the Board has merely resolved matters specifically related to Professional Conduct, which are squarely within the Board's bailiwick. As such, Appellant's claim that the Board lacked jurisdictional authority to make its ruling must fail.

## B. Due Process

[2] Appellant's second contention is that the Board's decision violates the due process provided by both the state and federal constitutions, in that the rules of the Board are unconstitutionally vague and overbroad. Appellant asserts that he was not provided adequate notice that he would be in violation of Board rules (1) by entering into a settlement agreement that prevented Smith from filing or maintaining a disciplinary complaint against him and (2) by issuing a map marked "preliminary" that Appellant knew would be recorded. Accordingly, Appellant claims that the Board's disciplinary actions violate the constitutional requirements of procedural due process.

"Procedural due process requires that an individual receive adequate notice and a meaningful opportunity to be heard before he is deprived of life, liberty, or property." *In re Magee*, 87 N.C. App. 650, 654, 362 S.E.2d 564, 566 (1987). Moreover, a professional license, such as a surveyor's license, is a property interest, and is thus protected by due process. *Id.* at 654, 362 S.E.2d at 567. However, Appellant makes no showing as to why the process afforded by the Board's review falls short of either federal or state due process requirements.

Appellant correctly notes that the test for constitutional vagueness is "whether a reasonably intelligent member of the profession would understand that the conduct in question is forbidden." *In re Wilkins,*

294 N.C. 528, 548, 242 S.E.2d 829, 841 (1978); *see also White v. N.C. State Bd. of Examiners of Practicing Psychologists*, 97 N.C. App. 144, 150, 388 S.E.2d 148, 152 (1990). Appellant further contends that no statute, Board rule, or Board policy explicitly prohibited settlement agreements like the one entered into by Appellant, Smith, and Piercy.

However, N.C. Gen. Stat. § 89C-20 requires that all licensees "shall cooperate fully with the Board in the course of any investigation." The record reflects that Appellant knew his settlement with Smith, which included a confidentiality clause and prohibited Smith from filing or continuing a claim with the Board, would necessarily prevent reporting to the Board. Thus, not only would a reasonably intelligent member of the profession understand that such conduct was forbidden, but the record reflects that the Appellant had personal knowledge that this confidentially clause within the settlement agreement would necessarily subvert the Board's investigation. We acknowledge that when the Board's investigators contacted the attorney for Appellant, Appellant was cooperative. While in our view, this should mitigate the decision of the Board, we cannot determine what weight, if any, the Board gave to this fact in issuing the penalty. The inclusion of such a clause is void against public policy when entered into after a complaint is pending. As such, the Board properly deemed that Appellant's settlement with Smith was not "conduct in the interest of protecting safety, health, and welfare of the public," thus violating the Board's Professional Rules of Conduct. *See* 21 NCAC 56.0701(b).

The record also reflects that Appellant issued Piercy a preliminary map knowing that she intended to record it. The Board found that "the recording of a preliminary plat is harmful to the public because Smith and third parties cannot rely on the data recorded on the map." As a result, the Board held that Appellant's actions regarding the preliminary plat also violated the Board's requirement that he "protect the public in the performance of [his] professional duties." *See* 21 NCAC 56.0701(b).

In order to be recordable in North Carolina, a plat must bear the certification of a land surveyor. N.C. Gen. Stat. § 47-30(d) (2011). The Board requires certifications on all maps except those where the public is to be placed on notice that this map is not a final product. *See* 21 NCAC 56.1103. Preliminary Plats, according to the Board rules, should bear a marking that states: "Preliminary Plat——Not for recordation, conveyances, or sales." 21 NCAC 56.1103(c)(3).

Here, Appellant instead provided Piercy with a preliminary map bearing the marking: "Preliminary Plat Only, Not for Conveyances."

**IN RE SUTTLES SURVEYING, PA**

[227 N.C. App. 70 (2013)]

Such marking omitted the Board's standard language that would have indicated to Piercy that the preliminary plat may not properly be used for recordation purposes. Thus, by marking the map "preliminary," Appellant essentially negated the effect of his certification. The record also reflects that Appellant had not used this kind of notation before, and that Appellant knew that preliminary maps are not to be recorded (excepting Appellant's experience with previous instances where preliminary subdivision maps are replaced by final maps shortly thereafter). As such, Appellant must have understood, as any reasonably intelligent member of the profession would have understood, that issuing a preliminary plat with knowledge that it would be improperly recorded violated the Board's rules.

## IV. Conclusion

The Legislature has granted the Board broad discretion to adjudicate disciplinary matters. *See* N.C. Gen. Stat. §§ 89C-10, 89C-20, 89C-21, 89C-22. The Board's decision to suspend Appellant's license and to reprimand Suttles Surveying was neither in excess of the Board's statutory authority nor in violation of the law. Moreover, contrary the claim of Appellant, the Board reached its decision not on the basis of any contractual obligations owed by Appellant to Smith, but rather on the basis of: (1) Appellant's lack of honesty in dealing with Smith before, during, and after settling their contractual dispute; (2) Appellant's harm to Smith and the general public in vouching for the recordability of an unrecordable preliminary plat; and (3) Appellant's promulgation of a contractual provision aimed to hinder Smith from prosecuting a complaint he had filed with the Board, thus obstructing the Board investigation. As such, we hold the Board's decision was within its disciplinary power. Accordingly, the trial court's affirmance of the Board's decision is

AFFIRMED.

Judges BRYANT and MCCULLOUGH concur.