ZACHARY, Judge.
 

 *158
 
 The North Carolina Board of Examiners for Engineers and Surveyors (respondent) appeals from an order of the trial court that reversed respondent's order revoking the land surveyor's license held by J. Randy Herron (petitioner). In its order, the trial court concluded that the procedures followed by respondent in its revocation of petitioner's surveyor's license "violated the Petitioner's Due Process rights to a fair and impartial hearing by an unbiased fact-finder" and "constituted unlawful procedure." On this basis, the trial court reversed and vacated respondent's order revoking petitioner's surveyor's license, and remanded for a hearing
 
 de novo
 
 before an Administrative Law Judge. On appeal, respondent
 
 *159
 
 argues that the trial court erred in reaching these conclusions and in reversing respondent's order. We agree.
 

 I. Background
 

 Respondent is an administrative agency that was established under Chapter 89C of the North Carolina General Statutes and that is charged with regulation of the practice of land surveying in North Carolina. "Chapter 89C of the General Statutes ... provides that, '[i]n order to safeguard life, health, and property, and to promote the public welfare, the practice of engineering and the practice of land surveying in this State are hereby declared to be subject to regulation in the public interest.' "
 
 In re Suttles Surveying, P.A.,
 

 227 N.C.App. 70
 
 , 75,
 
 742 S.E.2d 574
 
 , 578 (2013),
 
 disc. review improvidently allowed,
 

 367 N.C. 319
 
 ,
 
 754 S.E.2d 416
 
 (2014).
 

 Petitioner was first licensed as a land surveyor in 1989. In July 2004, respondent notified petitioner that, after a review of plats prepared by petitioner, respondent found "sufficient evidence which supports a charge of gross negligence, incompetence, or misconduct." Respondent issued a formal reprimand against petitioner, imposed a civil penalty of $2000.00, and required petitioner to complete a continuing education course in professional ethics within ninety days. Petitioner failed to complete the required course within ninety days and in April 2005, respondent suspended petitioner's surveyor's license, which was reinstated after he completed the professional ethics class. In November 2009, respondent again notified petitioner that, following its investigation into several plats prepared by petitioner, respondent had evidence of gross negligence, incompetence, or misconduct. Petitioner did not contest this ruling and in May 2010, respondent imposed a civil penalty of $2000.00 against petitioner and suspended petitioner's surveyor's license for a period of three months, after which petitioner's license was reinstated. The record thus establishes that at the time of the events giving rise to this appeal, respondent had previously imposed formal discipline against petitioner on two occasions.
 

 In November 2011, less than two years after respondent had suspended petitioner's surveyor's license for three months, respondent sent petitioner an annual notification regarding renewal of his surveyor's license. Respondent informed petitioner that his surveyor's license would expire on 31 December 2011 unless renewed. Although petitioner had been subject to the annual renewal requirement for more than twenty years, he failed to renew his surveyor's license in a timely fashion. Petitioner's surveyor's license was suspended from 31 January
 
 *160
 
 2012 until petitioner renewed his license on 28 February 2012. During February 2012, while petitioner's surveyor's license was suspended, petitioner conducted surveys, signed and certified five plats, and recorded one survey plat with the Haywood County Register of Deeds. Petitioner admitted that he practiced surveying while his license was inactive or expired, in violation of N.C. Gen.Stat. § 89C-16(c) (2015).
 

 On 13 June 2012, respondent sent petitioner a letter informing him that it was investigating petitioner's practice of surveying while his license was expired. The letter
 
 *324
 
 stated that during this investigation respondent had reviewed the five plats that petitioner signed and sealed in February 2012, and had determined that these plats violated certain provisions of the North Carolina Administrative Code (NCAC) governing the practice of surveying. On 14 November 2012, respondent mailed petitioner a Notice of Contemplated Board Action, informing petitioner that respondent intended to revoke petitioner's surveyor's license, but that petitioner had the right to request "a settlement conference and a formal hearing of [this] matter in the event that it could not be resolved consensually." Petitioner requested a settlement conference and on 28 February 2013, petitioner and his counsel met with respondent's Settlement Conference Committee. The Committee's recommendation was that petitioner's surveyor's license be revoked without a hearing, unless a hearing was requested by petitioner.
 

 On 13 March 2013, respondent conducted a meeting of its Board. During this meeting a Board member moved that the Board "approve [the] consent agenda as presented." The "consent agenda" included "Board-authorized case openings, comity applications, firm applications for nine professional corporations, 17 limited liability companies, [and] two business firms, one Chapter 87 corporation name change request, four d/b/a requests, minutes, settlement committee recommendations, and [a] request for retired status[.]" The written materials that accompanied the consent agenda included a written report by the Settlement Conference Committee concerning petitioner's case, with all identifying information redacted. The Settlement Conference Committee recommended that petitioner's surveyor's license should be revoked "without [a] hearing unless requested by [petitioner]." However, none of the Board members reviewed the written materials associated with petitioner's case. Instead, the Board summarily passed the motion to approve the consent agenda in its entirety, without discussion or review of the individual items on the agenda. As a result, although respondent unanimously approved the consent agenda that included petitioner's case, none of the Board members were "aware of the facts of the settlement
 
 *161
 
 conference ... [or] of the settlement recommendations" of the committee until the formal hearing on petitioner's case.
 

 On 14 August 2013, respondent wrote to petitioner, acknowledging his request for a formal hearing and setting out the specific allegations against petitioner. On 11 and 12 September 2013, several months after the Board meeting at which the Board had approved the consent agenda that included the Settlement Conference Committee's recommendation concerning petitioner's case, respondent conducted a hearing on the allegations against petitioner. The two Board members who had served on the Settlement Conference Committee-the Board's public member and Gary Thompson, a surveyor member of the Board-were recused from participation in the hearing. Despite this precaution, at the outset of the hearing, petitioner moved that his case be heard by an Administrative Law Judge instead of by respondent. Petitioner's motion was based on the fact that at the March 2013 Board meeting, respondent had approved the consent agenda that included a recommendation by the Settlement Conference Committee that petitioner's surveyor's license be revoked without a hearing unless a hearing was requested by petitioner. The record indicates, as discussed above, that the Board had passed a motion for a blanket approval of the entire consent agenda, but had not read or heard any information concerning petitioner's case in particular, and had not even known that the Committee was recommending revocation of petitioner's license. Petitioner, however, argued that the fact that the Board previously approved a consent agenda including his case was sufficient to establish that respondent had prejudged his case and could not afford him a "disinterested" review of the evidence. After a brief recess, petitioner's motion was denied, and each of the Board members stated on the record that he could be impartial.
 

 At the hearing, David Evans, respondent's assistant executive director, testified that in February 2012 he was informed that petitioner was practicing surveying without a license. Review of the records of the Haywood County Register of Deeds revealed that petitioner
 
 *325
 
 had signed five plats during February 2012, while his license was suspended. Respondent therefore established a Settlement Conference Committee to conduct further investigation into petitioner's practice of surveying while his license was suspended and also into whether the plats that petitioner signed in February 2012 complied with respondent's rules for the preparation of plats.
 

 Kristopher Kline was respondent's primary witness on the issue of petitioner's compliance with the standards of practice for land surveyors. Mr. Kline had been a licensed land surveyor for over twenty years,
 
 *162
 
 had extensive experience in teaching and writing on subjects related to surveying, and had served for three years as the chairman of the education committee of the North Carolina Society of Surveyors. Although Mr. Kline practices surveying in Haywood County, he also testified that the rules and standards for surveying and preparation of plats are uniform across North Carolina. Mr. Kline was familiar with petitioner's work as a surveyor, and had observed a "regular pattern of substandard work" by petitioner over a period of years. Mr. Kline had previously reported petitioner to respondent for failure to comply with the requirements for surveyors. Mr. Kline had examined the plats signed by petitioner while his license was suspended and found numerous violations of the rules for the preparation of plats or property survey maps. The defects that Mr. Kline observed in petitioner's plats may be generally summarized as follows:
 

 1. Practice of surveying without a license.
 

 2. Failure to indicate or mark any ties or tie lines on some of his plats.
 
 [1]
 

 3. Failure to employ ties that are external to the parcel being surveyed, including ties to the corners of an adjoining parcel so long as neither corner is on a common boundary line.
 

 4. Repeated failure to properly mark right of ways (ROWs), including failure to indicate the source of a ROW, its width, and where the ROW crosses the property's boundary line.
 

 5. Failure to include a ROW that appeared in a prior map, based on petitioner's belief that it was not a valid ROW or easement.
 

 6. Lack of monumentation.
 
 [2]
 

 7. Petitioner's practice of signing his plats in red ink, which he admitted was done to make it harder for a plat to be copied, although N.C. Gen.Stat. § 37-40 requires the signature to be legible and the plat to be reproducible.
 

 Mr. Kline testified that the ties employed by petitioner in his plats did not comply with the purpose of a surveying tie as stated in respondent's
 
 *163
 
 Survey Ties Guidelines manual ("the Guidelines"), which is provided to North Carolina surveyors. The Guidelines provide that "[t]he purpose of a tie is to reproduce a boundary when all or most of the property corners have been destroyed, or to verify the position of any given corner without the necessity of resurveying the entire tract of land." The Guidelines further instruct surveyors that:
 

 The North Carolina Board of Examiners for Engineers and Surveyors is providing this document to serve as an interpretative guide for proper ties to comply with Board Rule 21-56.1602(g). The variation in surveys makes it difficult to prepare a finite list of procedures for proper ties. Use of the ties shown and described herein will assure the Professional Land Surveyor (PLS) that a tie will comply with the requirements for a tie in the Board Rules. Professional judgment must be used to prepare and document a tie on a plat or report of survey. Variations from the examples given here may be acceptable to the Board if the intent of the rule is met.
 

 The ties depicted in the Guidelines are all ties to points outside the property being surveyed. Mr. Kline testified that without a tie to an external point, it would not be possible to reproduce the survey without conducting a
 
 *326
 
 new survey. No evidence was elicited to contradict that point.
 

 Petitioner presented the testimony of three local attorneys whose practices included real estate transactions, each of whom testified that he considered petitioner to be a competent surveyor and had found petitioner's surveys to be adequate for his use. However, each of petitioner's witnesses also testified that he was unfamiliar with the rules and regulations governing the practice of surveying and did not know whether petitioner's plats met these requirements.
 

 Petitioner testified at the hearing and admitted that he had practiced surveying during February 2012 while his license was suspended. Petitioner also admitted that the Guidelines stated that the purpose of marking and indicating ties in a plat was to enable another surveyor to reconstruct the survey in the event that the property's corners were destroyed, and that without external ties this situation would require a new survey. However, petitioner also tendered various explanations for why he believed that his plats were in compliance with the rules for the practice of surveying. Petitioner generally conceded that he was "in the wrong" and that it was appropriate for respondent to impose discipline against him, and admitted that he had been disciplined by respondent on two prior occasions.
 

 *164
 
 On 19 September 2013, respondent issued its final decision revoking petitioner's land surveying license. Petitioner appealed to the Buncombe County superior court. Following a review of the record in August 2015, the trial court entered an order on 15 September 2015. In its order, the trial court concluded that the administrative procedure followed by respondent, in which the Settlement Conference Committee made a recommendation, followed by a full hearing if requested by petitioner, constituted a violation of petitioner's due process right to a "fair and impartial hearing by an unbiased fact finder and adjudicator[.]" The trial court reversed and vacated respondent's final decision and ordered that the case be "remanded to Respondent to cause an Administrative Law Judge to be appointed, which appointed Administrative Law Judge shall hear this matter
 
 de novo
 
 to render a final decision in this matter." Respondent noted an appeal to this Court from the trial court's order.
 

 II. Standard of Review
 

 N.C. Gen.Stat. § 150B-43 provides that "[a]ny person who is aggrieved by the final decision in a contested case, and who has exhausted all administrative remedies made available to him by statute or agency rule, is entitled to judicial review of the decision." N.C. Gen.Stat. § 150B-51(b) authorizes a trial court to reverse or modify an agency's decision if the petitioner's substantial rights have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
 

 (1) In violation of constitutional provisions;
 

 (2) In excess of the statutory authority or jurisdiction of the agency;
 

 (3) Made upon unlawful procedure;
 

 (4) Affected by other error of law;
 

 (5) Unsupported by substantial evidence admissible under [N.C. Gen.Stat. §§ ] 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
 

 (6) Arbitrary, capricious, or an abuse of discretion.
 

 " 'The North Carolina Administrative Procedure Act governs both trial and appellate court review of administrative agency decisions.' 'On judicial review of an administrative agency's final decision, the substantive nature of each [issue on appeal] dictates the standard of review.' "
 
 Nanny's Korner Care Ctr. v. N.C. Dep't of Health & Hum. Servs.,
 

 234 N.C.App. 51
 
 , 57,
 
 758 S.E.2d 423
 
 , 427 (2014) (quoting
 
 *165
 

 Eury v. N.C. Employment Security Comm.,
 

 115 N.C.App. 590
 
 , 596,
 
 446 S.E.2d 383
 
 , 387,
 
 disc. review denied,
 

 338 N.C. 309
 
 ,
 
 451 S.E.2d 635
 
 (1994), and
 
 N.C. Dep't of Env't & Natural Res. v. Carroll,
 

 358 N.C. 649
 
 , 658,
 
 599 S.E.2d 888
 
 , 894 (2004) ). " 'The first four grounds for reversing or modifying an agency's decision ... may be characterized as 'law-based' inquiries,' while '[t]he final two grounds ... may be characterized as 'fact-based' inquiries.' "
 
 Nanny's Korner,
 

 234 N.C.App. at 58
 
 ,
 
 758 S.E.2d at 427
 
 (quoting
 
 Carroll,
 

 358 N.C. at 659
 
 ,
 
 599 S.E.2d at
 
 894 ).
 
 *327
 
 " '[Q]uestions of law receive
 
 de novo
 
 review,' whereas fact-intensive issues 'such as sufficiency of the evidence to support [an agency's] decision are reviewed under the whole-record test.' "
 
 Carroll,
 

 358 N.C. at 659
 
 ,
 
 599 S.E.2d at 894
 
 (quoting
 
 In re Greens of Pine Glen Ltd. P'ship,
 

 356 N.C. 642
 
 , 647,
 
 576 S.E.2d 316
 
 , 319 (2003) ). " 'Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal."
 
 Craig v. New Hanover Cty. Bd. of Educ.,
 

 363 N.C. 334
 
 , 337,
 
 678 S.E.2d 351
 
 , 354 (2009) (quoting
 
 Pine Glen,
 

 356 N.C. at 647
 
 ,
 
 576 S.E.2d at
 
 319 ). " 'Under the whole record test, the reviewing court must examine all competent evidence to determine if there is substantial evidence to support the administrative agency's findings and conclusions.' "
 
 Blackburn v. N.C. Dep't of Pub. Safety,
 
 --- N.C.App. ----, ----,
 
 784 S.E.2d 509
 
 , 517-18 (2016) (quoting
 
 Henderson v. N.C. Dept. of Human Resources,
 

 91 N.C.App. 527
 
 , 530,
 
 372 S.E.2d 887
 
 , 889 (1988) ). "Substantial evidence" is defined as "relevant evidence a reasonable mind might accept as adequate to support a conclusion." N.C. Gen.Stat. § 150B-2(8b) (2015). It is well-established that:
 

 In reviewing the whole record, the trial court "is not the trier of fact but rather sits as an appellate court and may review both (i) sufficiency of the evidence presented to the municipal board and (ii) whether the record reveals error of law." "It is not the function of the reviewing court, in such a proceeding, to find the facts but to determine whether the findings of fact made by the Board are supported by the evidence before the Board." ... The trial court examines the whole record to determine whether the Board's decision is supported by competent, material, and substantial evidence. In doing so, "the trial court may not weigh the evidence presented to the agency or substitute its own judgment for that of the agency."
 

 Good Neighbors v. County of Rockingham,
 
 --- N.C.App. ----, ----,
 
 774 S.E.2d 902
 
 , 907-08 (quoting
 
 Capricorn Equity Corp. v. Town of Chapel Hill Bd. of Adjust.,
 

 334 N.C. 132
 
 , 136,
 
 431 S.E.2d 183
 
 , 186 (1993),
 
 In re
 

 Campsites Unlimited,
 

 287 N.C. 493
 
 , 498,
 
 215 S.E.2d 73
 
 , 76 (1975), and
 
 *166
 

 Cumulus Broadcasting, LLC v. Hoke Cnty. Bd. of Comm'rs,
 

 180 N.C.App. 424
 
 , 426,
 
 638 S.E.2d 12
 
 , 15 (2006) ),
 
 disc. rev. denied,
 

 368 N.C. 429
 
 ,
 
 778 S.E.2d 78
 
 (2015).
 

 III. Trial Court's Ruling on Due Process
 

 The trial court vacated and reversed respondent's final decision and remanded the case for the appointment of an administrative law judge, based upon the trial court's conclusion that the procedure employed by respondent violated petitioner's right to due process of law. We conclude that the trial court erred in reaching this conclusion.
 

 Without question, " '[p]rocedural due process requires that an individual receive adequate notice and a meaningful opportunity to be heard before he is deprived of life, liberty, or property.' Moreover, a professional license, such as a surveyor's license, is a property interest, and is thus protected by due process."
 
 Suttles,
 

 227 N.C.App. at 77
 
 ,
 
 742 S.E.2d at 579
 
 (quoting
 
 In re Magee,
 

 87 N.C.App. 650
 
 , 654,
 
 362 S.E.2d 564
 
 , 566 (1987) ). In this case, the trial court found and concluded that petitioner's right to due process was violated in that he did not receive a hearing before a fair and unbiased tribunal.
 

 Whenever a government tribunal ... considers a case in which it may deprive a person of life, liberty or property, it is fundamental to the concept of due process that the deliberative body give that person's case fair and open-minded consideration. "A fair trial in a fair tribunal is a basic requirement of due process."
 

 Crump v. Bd. of Education,
 

 326 N.C. 603
 
 , 613,
 
 392 S.E.2d 579
 
 , 584 (1990) (quoting
 
 In re Murchison,
 

 349 U.S. 133
 
 , 136,
 
 75 S.Ct. 623
 
 , 625,
 
 99 L.Ed. 942
 
 , 946 (1955) ). In
 
 Crump,
 
 our Supreme Court discussed the term "bias":
 

 While the word "bias" has many connotations in general usage, the word has few specific denotations in legal terminology. Bias has been defined as "a predisposition to decide a cause or an issue in a certain way, which does not leave the mind perfectly open to conviction," Black's Law
 
 *328
 
 Dictionary 147 (5th ed. 1979)[.] ... Bias can refer to preconceptions about facts, policy or law; a person, group or object; or a personal interest in the outcome of some determination. [The plaintiff] ... alleged that one or more Board members came into his hearing having already decided to vote against him, based on "factual" information obtained outside the hearing process. This type [of] bias can be labeled a "prejudgment of adjudicative facts."
 

 *167
 

 Crump,
 

 326 N.C. at 615
 
 ,
 
 392 S.E.2d at 585
 
 . In the instant case, as in
 
 Crump,
 
 petitioner has alleged that respondent prejudged the adjudicative facts of his case. "A party claiming bias or prejudice may move for recusal and in such event has the burden of demonstrating 'objectively that grounds for disqualification actually exist.' "
 
 In re Ezzell,
 

 113 N.C.App. 388
 
 , 394,
 
 438 S.E.2d 482
 
 , 485 (1994) (quoting
 
 State v. Kennedy,
 

 110 N.C.App. 302
 
 , 305,
 
 429 S.E.2d 449
 
 , 451 (1993) ). " 'However, in order to prove bias, it must be shown that the decision-maker has made some sort of commitment, due to bias, to decide the case in a particular way.' "
 
 Smith v. Richmond Cty. Bd. of Education,
 

 150 N.C.App. 291
 
 , 299,
 
 563 S.E.2d 258
 
 , 265-66 (2002) (quoting
 
 Evers v. Pender County Bd. of Educ.,
 

 104 N.C.App. 1
 
 , 15,
 
 407 S.E.2d 879
 
 , 887 (1991),
 
 aff'd,
 

 331 N.C. 380
 
 ,
 
 416 S.E.2d 3
 
 (1992) ),
 
 disc. review denied,
 

 356 N.C. 678
 
 ,
 
 577 S.E.2d 297
 
 (2003). "This Court has held that there is a 'presumption of honesty and integrity in those serving as adjudicator' on a quasi-judicial tribunal."
 
 In re N. Wilkesboro Speedway, Inc.,
 

 158 N.C.App. 669
 
 , 675-76,
 
 582 S.E.2d 39
 
 , 43 (2003) (quoting
 
 Taborn v. Hammonds,
 

 83 N.C.App. 461
 
 , 472,
 
 350 S.E.2d 880
 
 , 887 (1986) ).
 

 The trial court made the following findings of fact directly pertinent to its conclusion that petitioner's due process rights were violated. Other findings by the trial court might be construed as part of the trial court's analysis of due process. For example, the court's finding that there was no substantial evidence to support respondent's findings that petitioner failed to comply with surveying regulations might be intended to support the trial court's conclusion that respondent was biased. However, the findings and conclusions listed below are the ones that are more directly pertinent to the issue of due process.
 

 ...
 

 11. ... [O]n November 14, 2012, the Board mailed Herron a Notice of Contemplated Board Action, stating that the Board intended to revoke the land surveying certificate of licensure of Petitioner, and offering him an opportunity for a settlement conference and a formal hearing of his matter in the event it could not be resolved consensually.
 

 12. Herron requested and engaged in a settlement conference accompanied by his counsel on February 28, 2013 with the Settlement Conference Committee of the Board, composed of two Board members, along with the Executive Director of the Board and Board Counsel.
 

 *168
 
 13. The Settlement Conference Committee and Herron were unable to resolve the issues, and Petitioner's counsel requested a Board hearing.
 

 ...
 

 15. ... [A]t the March 13, 2013 Board meeting of Respondent ("March Board Meeting"), before any notice of any hearing at which Herron or his counsel were permitted to attend and present evidence, cross-examine witnesses, or otherwise present a defense, the Board received factual information concerning this disputed matter from the Settlement Committee ... without the use of Herron's name, and further received the recommendation of the Settlement Conference Committee to revoke Herron's license, and then affirmatively and unanimously voted to approve the recommendation for license revocation upon the alleged facts then made known to it.
 

 16. The Board's vote to revoke Herron's surveying license at the March Board Meeting was confirmed by letter to Petitioner's counsel ... [stating] in pertinent part, that: "The full Board at its March 13, 2013 meeting approved the recommendation of the Settlement Conference Committee which was to revoke Herron's surveying
 
 *329
 
 Certificate of License. The Board acknowledges the request of your client for a hearing...."
 

 17. Thereafter, the Board provided notice of a hearing ... on or about August 14, 2013 to Petitioner.
 

 18. The hearing was held before the Board on September 11 and 12, 2013, at which hearing Herron was represented by his counsel.
 

 19. At the outset of such hearing, Petitioner, by and through his counsel, moved to disqualify the Board from hearing the contested case and that an Administrative Law Judge should be appointed because the Board had already made a decision before hearing evidence to approve the recommendation of the Settlement Conference Committee to revoke Petitioner's license from a range of penalty options that were available, and that constituted prejudgment of this matter and a biased fact-finder and adjudicator of the outcome of this matter.
 

 *169
 
 20. The motion to disqualify [respondent] ... was denied following a closed session during which members of the Board deliberated without further participation by Petitioner Herron or his counsel.
 

 21. All of the participating Board members at the September 11, 2013 hearing, with the exception of Board Member Willoughby, were in attendance and voted to approve the recommendation of the Settlement Conference Committee at the March Board Meeting.
 

 22. The Final Decision entered by the Board did in fact revoke Petitioner's Professional Land Surveying License[.]
 

 Based on its findings of fact, the trial court made the following conclusions of law regarding petitioner's right to due process:
 

 3. Petitioner was entitled to a fair and impartial hearing by an unbiased fact finder and adjudicator under the Fifth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment to the Constitution, and under Article I, Section 19 of the Constitution of North Carolina.
 

 4. That at the March Board Meeting, where Petitioner and his counsel were not present or provided an opportunity to be heard, and prior to any hearing, the entire Board, except for one absent member, received facts of the case as submitted by the Settlement Conference Committee, without the name of Petitioner, and voted affirmatively to approve the recommendation of the Settlement Conference Committee to revoke Petitioner's certificate of licensure without hearing unless requested by the respondent, and thereby was made upon unlawful procedure and violated the Petitioner's Due Process rights to a later fair and impartial hearing.
 

 5. The denial of Petitioner's motion to disqualify the Board from hearing the matter and for reference to an Administrative Law Judge, as provided in N.C.G.S. § 150B-40(e), and thereafter conducting the hearing violated the Petitioner's Due Process rights to a fair and impartial hearing by an unbiased fact-finder and adjudicator contrary to both the aforesaid constitutional provisions and constituted unlawful procedure.
 

 *170
 
 We note that petitioner did not claim, and the trial court did not find, that anyone involved in this matter had a personal bias against petitioner individually or on the basis of an aspect of petitioner's identity such as race or religion. Instead, the trial court's ruling is based solely on an analysis of the administrative structure under which respondent decided petitioner's case. The trial court's conclusion that petitioner's right to due process was violated was based on the following:
 

 1. During respondent's March 2013 Board meeting, respondent passed a motion approving an extensive "consent agenda" that included the recommendation of the Settlement Conference Committee on petitioner's case. None of the Board members reviewed the Committee's written report, which had redacted all identifying information.
 

 2. In September 2013, respondent conducted a hearing on the allegations against petitioner, at which the Board members heard sworn testimony, received documentary evidence, and rendered a decision.
 

 *330
 
 All but one of the Board members at the hearing were also present at the earlier meeting.
 

 We conclude that these circumstances, which were not accompanied by evidence that any member of respondent's Board was personally biased against petitioner, do not support the trial court's holding on the issue of due process. We have reached this conclusion for several reasons.
 

 We first clarify the nature of the action taken by respondent at its March 2013 meeting. The trial court found that at this meeting respondent "received factual information concerning this disputed matter" and then "unanimously voted to approve the recommendation for [petitioner's] license revocation." The trial court also found that respondent's "vote to revoke" petitioner's surveying license was confirmed in a letter to Petitioner's counsel. These findings suggest that at its March 2013 meeting respondent evaluated the evidence against petitioner and rendered a decision as to the appropriate level of discipline. This implication is not accurate.
 

 As discussed above, the Board did not receive a presentation from the Settlement Conference Committee at the March 2013 Board meeting. Although the Board passed a motion for a blanket approval of the entire consent agenda that included written materials prepared by the Committee in petitioner's case, it did so without reading these documents or discussing petitioner's case. The wisdom of this procedure,
 
 *171
 
 whereby significant decisions are made without discussion or review, may be subject to question. However, our focus is not on the merits of respondent's internal procedures, but on whether these procedures violated petitioner's due process rights. The record shows that respondent's approval of the consent agenda did not include any review or assessment by the Board of the evidence in petitioner's case, or any analysis of whether revocation of petitioner's license would be appropriate. As a result, the trial court's findings of fact to the contrary lack evidentiary support.
 

 The trial court essentially held that the respondent's blending of investigative and adjudicative functions violated petitioner's constitutional right to due process as a matter of law, without requiring evidence that any individual on respondent's Board was biased against petitioner. We conclude that although respondent technically "approved" the Settlement Conference Committee's recommendation, it did so without learning that the Committee recommended revocation of petitioner's license and without any exposure to the evidence or investigation that had led to this recommendation. Moreover, this Court has previously held that "[t]there is a critical distinction between disqualifying bias against a particular party and permissible pre-hearing knowledge about the party's case."
 
 Wilkesboro Speedway,
 

 158 N.C.App. at 676
 
 ,
 
 582 S.E.2d at
 
 43 (citing
 
 Farber v. N.C. Psychology Bd.,
 

 153 N.C.App. 1
 
 , 9,
 
 569 S.E.2d 287
 
 , 294 (2002),
 
 cert. denied,
 

 356 N.C. 612
 
 ,
 
 574 S.E.2d 679
 
 ). " '[M]ere familiarity with the facts of a case gained by an agency in the performance of its statutory duties does not disqualify it as a decisionmaker.' "
 
 Farber,
 

 153 N.C.App. at 9
 
 ,
 
 569 S.E.2d at 294
 
 (quoting
 
 Thompson v. Board of Education,
 

 31 N.C.App. 401
 
 , 412,
 
 230 S.E.2d 164
 
 , 170 (1976),
 
 reversed on other grounds,
 

 292 N.C. 406
 
 ,
 
 233 S.E.2d 538
 
 (1977) ).
 

 In
 
 Farber,
 
 the North Carolina Psychology Board (the respondent) assigned a staff psychologist to investigate a report that the petitioner, a licensed psychologist, had engaged in an improper romantic relationship with a patient. The investigator presented his findings to respondent, with the petitioner's name redacted, and the respondent found probable cause to issue a formal complaint against the petitioner. At the formal hearing on the matter, the petitioner moved to disqualify those board members who had heard the investigator's report and sought to have his case heard by an administrative law judge. The petitioner's motion was denied and following the hearing respondent suspended the petitioner's license for two years. The petitioner appealed to the superior court, which reversed on the grounds that the respondent had violated the petitioner's due process and statutory rights. This Court reversed the trial court, holding that:
 

 *172
 
 Regarding bias in the context of an administrative agency, the United States Supreme Court has cautioned that "[t]he contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias
 
 *331
 
 in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators[.]" ... This Court has echoed the Supreme Court's warning, stating that "there is no
 
 per se
 
 violation of due process when an administrative tribunal acts as both investigator and adjudicator on the same matter." Thus, "[a]bsent a showing of actual bias or unfair prejudice petitioner cannot prevail."
 

 Farber,
 

 153 N.C.App. at 9
 
 ,
 
 569 S.E.2d at 294
 
 (quoting
 
 Withrow v. Larkin,
 

 421 U.S. 35
 
 , 47,
 
 95 S.Ct. 1456
 
 , 1464,
 
 43 L.Ed.2d 712
 
 , 723-24 (1975), and
 
 Hope v. Charlotte-Mecklenburg Bd. of Education,
 

 110 N.C.App. 599
 
 , 603-04,
 
 430 S.E.2d 472
 
 , 474-75 (1993) ). We conclude that
 
 Farber
 
 is controlling on the issue of whether respondent's administrative procedure constitutes a
 
 per se
 
 violation of petitioner's right to due process.
 

 Petitioner attempts to distinguish
 
 Farber
 
 from this case on the grounds that in
 
 Farber
 
 the pre-hearing knowledge of the petitioner's case arose when the board made a preliminary finding of probable cause to pursue the allegations against the petitioner. However, because the board in
 
 Farber
 
 made a finding of probable cause based upon an assessment of the evidence against that petitioner, there was more, rather than less, opportunity for the board in
 
 Farber
 
 to develop a bias against the petitioner than in the case now before this Court, in which respondent approved the recommendation of the Settlement Conference Committee without review of the evidence or even of the nature of that recommendation.
 

 We conclude that the trial court erred by holding that petitioner's due process rights were violated. We reverse the trial court's order and remand for further proceedings applying the standard of review discussed above, in Section II of this opinion.
 

 REVERSED AND REMANDED.
 

 Judges STEPHENS and McCULLOUGH concur.
 

 [1]
 

 In the practice of surveying, a tie consists of a link between a point on the property being surveyed with another point that has previously been surveyed.
 

 [2]
 

 The United States Bureau of Land Management defines a "monument" as a "physical structure, such as an iron post ... which marks the location of a corner point."